STATE OF MISSOURI, at the Relation of CHARLES HENRY CUMMINGS and STANDARD GENERATOR SERVICE WAREHOUSE, INC., a Corporation, Relators, v. THE HONORABLE JOHN A. WITTHAUS, Judge of the Circuit Court of the Thirteenth Judicial Circuit of Missouri, Respondent.—No. 41271.—219 S. W. (2d) 383.

Court en Banc, March 30, 1949.

*Leahy & Leahy, Joseph L. Badaracco* and *Roberts P. Elam* for relators; *E. Chas. Eichenbaum* of counsel.

*Roy W. McGhee* and *Limbaugh & Limbaugh* for respondent.

[385] CONKLING, J.—We here have before us a problem under the discovery section of our new Civil Code respecting production of documents for inspection and copying. Mo. R. S. A. § 847.86, Section 86, Civil Code of Missouri, Laws of Missouri, 1943, page 356. This action is an original proceeding in prohibition instituted by relators, Charles Henry Cummings and Standard Generator Service Warehouse, Inc., challenging the jurisdiction of the respondent, Judge Witthaus, as circuit judge, to enter the order for inspection of documents set out infra, in a case pending before him wherein one Nellie Johnson is plaintiff and relators are defendants.

The issue now before us arose in this manner. Nellie Johnson, as plaintiff, filed [386] an action against relators, as defendants, for damages for the alleged wrongful death of her husband after he was killed on October 19, 1946, in Wayne County, Missouri by being struck by a truck driven by the individual relator Cummings. Plaintiff alleged that at the time her husband was killed Cummings, in the driving of said truck, was acting as the agent, servant and employee of and was then on the business of the corporate relator, Standard Generator Service Warehouse, Inc. In the lower court those allegations were denied by the answers of the defendants, relators here. The issue of agency, whether Cummings was a servant or employee of the corporate relator and at that time was on its business, is thus clearly raised.

 Plaintiff in that action filed a ''Motion for Production of Documents'' to require certain documents to be produced for inspection, copying or photographing. The motion alleged the documents to be in the ''possession, custody or control of defendants or one of them'', and that the documents ''constitute or contain evidence material to the issues involved in this action''. Respondent sustained the motion in part. Upon relators' petition therefor we issued our provisional rule. Relators now contend that in so sustaining said motion respondent exceeded his powers, authority and jurisdiction. In State ex rel. Schleuter Mfg. Co. v. Beck, Judge, 337 Mo. 839, 85 S. W. (2d) 1026, 1033, this court said: ''The presumption is in favor of the right action of the trial court. The burden is on the relator to show that the respondent lacked jurisdiction or exceeded his jurisdiction''.

 It was not without reason that safeguards were written into the law to preclude unwarranted excursions into the privacy of a litigant's papers. Article I, Section 15, Constitution of Missouri, 1945, and Section 86, supra. But under Section 86 the court nisi is vested with a discretion as to whether he ''may order'' the production of the requested documents which are not privileged, and we may not interfere with that discretion unless it appears the same was abused or that documents were ordered produced in violation of relators' fundamental rights of privilege and privacy. Section 86,

supra, State ex rel. St. Louis Union Trust Co. v. Sartorious, 351 Mo. 111, 171 S. W. (2d) 569. Under the guise of discretion the trial judge cannot authorize a mere "fishing expedition", but Section 86 exemplifying modern discovery procedures and the modern view of the administration of justice, authorizes a limited invasion of certain rights in a guarded and limited procedure. Discovery statutes are intended to assist in the administration of justice, are remedial in nature and are liberally construed. But they cannot be liberally construed in contravention of inhibitions respecting unreasonable searches and seizures or the invasion of the right of privacy. 27 C. J. S., Discovery, § 69, page 102.

We have here no record of what evidence was heard by respondent upon the hearing of the motion in his court but we must presume there was a reasonable basis for his action. 21 C. J. S. § 237. In fact respondent's return so avers. After the hearing on the "Motion for Production of Documents" respondent ordered relators to produce for inspection the following:

1. The corporate books and records showing the withholding of income taxes from the earnings of Charles Henry Cummings from January 1, 1946 to September 15, 1947.

2. The corporate books and records showing the withholding from the earnings of Charles Henry Cummings of all Social Security payments from January 1, 1946 to September 15, 1947.

3. The records of the Standard Generator Service Warehouse, Inc. of Paragould, Arkansas, showing remittance of the amounts of Social Security and income taxes withheld from the salary of Charles Henry Cummings to the United States.

4. The statement of account of the records of the Standard Generator Service Warehouse, Inc., of Paragould, Arkansas between said corporation and Charles Henry Cummings, showing the amount Charles Henry Cummings owed said corporation from the date he became employed [387] by it to the time such employment terminated.

5. Statement from the books of Standard Generator Service Warehouse, Inc., of Paragould, Arkansas, showing the account between said corporation and Charles Henry Cummings from January 1, 1946 to September 15, 1947, as to all compensation paid Charles Henry Cummings and all sums paid by such corporation to him for any and all purposes.

6. The insurance policy or policies for all insurance coverage on the Dodge truck which was being driven by Charles Henry Cummings on October 19, 1946, as alleged in the plaintiff's petition on file in this cause, and the insurance policy or policies for all insurance coverage on the other trucks for which defendant Charles Henry Cummings had certificates of title in his name on said date of October 19, 1946.

7. All written agreements entered into between Standard Generator Service Warehouse, Inc. and Charles Henry Cummings from the date of the employment by said corporation of Charles Henry Cummings to the termination of such employment.

The sole questions for our determination in this case are whether the books, records, statements of account, insurance policies and written agreements mentioned in the above order are material and admissible upon the above stated issue in the trial of the cause, and whether they are "designated" within the meaning of the statute. State ex rel. Thompson v. Harris, 355 Mo. 176, 195 S. W. (2d) 645, Mo. R. S. A. § 847.86.

The discovery section of our new Code, Mo. R. S. A. 847.86, Laws Mo. 1943, p. 379, 380, Section 86, under the purported authority of which respondent's instant order was made, is as follows: "Upon motion of any party showing good cause therefor and upon notice to all other parties, the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any *designated* documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, sampling, or photographing the property or any designated relevant object or operation thereon. The order shall specify the time, place and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just." (Italics ours.)

It is contended that the books, records, documents, etc., as named in the court's order "have not been *designated* as intended" by the just above quoted statute. With the single exception hereinafter noted, it is difficult to see how plaintiff in her motion or the respondent judge, in his order, with greater clarity and definiteness could have *designated* documents they have not seen. In State ex rel. Iron Fireman Corporation v. Ward, 351 Mo. 761, 173 S. W. (2d) 920, 923 upon this question this court said: "And if this right of discovery is to have practical value, the party invoking it should not be held to too strict a showing as to the contents of records that he has never seen". It follows also for the same reasons that plaintiff and respondent should not be held to too great accuracy in designation and description. With the exception of the written agreements (paragraph 7 supra) the documents desired by plaintiff to be produced are sufficiently designated. Considered in the light of ordinary understandable language relators should readily recognize and be able to quickly distinguish and identify the particular documents required. In the

Iron Fireman case, supra, we further said: "We should not require too strict a showing of materiality, or we may defeat the purpose of the statute and the right of discovery." See also, Rivenbark v. Shell Union Oil Corporation, 217 N. C. 592, 8 S. E. (2d) 919, 923, Union Trust Co. v. Superior Court, 11 Cal. (2d) 449, 81 Pac. (2d) 150. Except as to paragraph 7 of the order, supra, relators' contention respecting designation is without merit.

[388] It is next contended by relators that the books, records, statements of account, insurance policies and written agreements as separately stated in the order, supra, are not material to any issue and particularly are not material to prove agency in the case before respondent.

We will consider in order the above set out seven paragraphs of respondent's order to produce for inspection.

As to the books and records showing withholdings from earnings from income taxes. Relators base their argument as to the immateriality and inadmissibility of withholdings from earnings of Cummings for payment of income tax, upon certain regulations and provisions of the United States Internal Revenue Code. But we are neither impressed nor persuaded by the fine distinctions without real differences sought to be made in the cited Regulations to the Internal Revenue Code. The basic question involved here is: Was Cummings an employee or servant of the corporate relator and engaged upon its business when plaintiff's husband was killed? That question must be determined upon the trial of the cause under the principles of Missouri law and not under the Regulations promulgated by the Internal Revenue Department. In seeking to determine that question, the law looks factually to see whether the corporate relator had any right of control of Cummings in what he was then doing. Matters which tend to shed light upon the existence of any such right of control are admissible and material. No company, nor any employer of an independent contractor over whom is retained no right to control the method of performing the contract may retain or withhold any portion of the contract price for payment of income taxes. On the other hand, one who stands in the relation of employer to a servant or employee is required to withhold a certain portion of the wage, salary or other remuneration of his servant or employee, and to remit the same to the Internal Revenue Department to apply upon the employee's income taxes. Whether the corporate relator retained any portions of Cummings' income for those purposes may not be wholly and finally determinative of the issue of the character of the then existing relationship, but that fact and the record of such withholdings, the purpose thereof, and payments to the Government certainly are material and admissible as tending to shed light upon that issue. Fidelity & Casualty Co., Inc. v. Tar Asphalt Trucking Co., Inc., et al., 30 Fed. Supp. 216.

. As to the second item in the court's order respecting withholdings from the earnings of Cummings for Social Security payments to the government, the same reasoning must apply and the same conclusion must be reached. If the corporate relator withheld payments from Cummings' earnings for Social Security payments, that fact, the records thereof, and the purpose thereof, unquestionably are material and admissible as *tending* to show Cummings was the employee of the corporate relator. And for the same reasons the records of the corporate relator showing remittances to the government of amounts withheld for Social Security and income taxes are both material to the issue and admissible in evidence.

This brings us to item four of the court's order respecting the statement of account between the two relators, the amount owed by the individual relator to the corporate relator. We cannot agree with respondent that the statement of personal account as between the two relators, without respect to how much Cummings may owe the corporate relator could have any bearing at all upon the issue of agency. The authorities cited are not in point and our research has not revealed any authority so holding. While testimony showing method of payment from the corporate relator to the individual relator (whether by time or by job) would be admissible (Skidmore v. Haggard, 341 Mo. 837, 110 S. W. (2d) 726), the mere statement of account showing how much the individual relator owes the corporate relator would not show that method of payment. We think that how much, if any, is owed by the individual relator to the corporate relator is a privileged matter not tending to establish either the affirmative or the negative of the issue. This point must be ruled in favor of relators.

[389] However, the fifth item of the court's order, the statement called for, i. e., "all sums paid by such corporation (corporate relator) to him (individual relator) for any and all purposes" is clearly material. Inasmuch as such statement may show "the purposes" of such payments and thus on its face establish materiality and admissibility, it must be allowed. It may show that "the purposes" are payments upon separate independent contracts, and thus *tend* to establish that Cummings was not an employee or servant. On the other hand, the record may show "the purposes" to be for wages or salary thus *tending* to establish that Cummings was an employee and servant. In either event such a statement from the corporate relator's books, without question, seems to be material and admissible and this point must be ruled in favor of respondent. In re Klemann, 132 Ohio St. 187, 5 N. E. (2d) 492.

We next consider the sixth item of respondent's order with respect to the insurance policy or policies covering the truck which struck plaintiff's husband, and upon other trucks which Cummings

owned on the date of the accident. The question here presented must be ruled against relators.

This point is not new. Whether the truck which struck plaintiff's husband was owned by the individual or the corporate relator is not determinative of the insurance policy question instantly before us. In determining whether certain evidence is material, relevant and admissible the courts apply the simple test of whether it *tends* to prove an issue. If the particular evidence does *tend* to prove an issue formed by the pleadings, that evidence cannot be excluded merely because it may also tend to show that some one carried liability insurance on the particular motor vehicle, or any motor vehicle. The corporate relator by its answer takes the position that the individual relator was not its servant and employee. If Cummings was but a mere independent contractor, for whose acts in the operation of the truck the corporate relator was not responsible under respondeat superior, then why should the corporate relator care to protect itself by liability insurance on the truck? We concede that sometimes that is done but nevertheless such fact may *tend* to establish the issue. It is evidence the court and jury are entitled to have. Our inquiries go only to the admissibility and materiality of the policies of insurance. Nor do we here pass on the quantum or probative value of any proof to establish any issue.

But we think it clear that if such policies would show that the corporate relator by policies of insurance caused itself to be protected from acts of Cummings in the operation of this, or other trucks, such evidence would *tend* to establish the issue stated above. For that reason such policies are both material and admissible. See, Bass v. Kansas City Journal Post Co., 347 Mo. 681, 148 S. W. (2d) 548, Boten v. Sheffield Ice Co., 180 Mo. App. 96, 166 S. W. 883, Van Drake v. Thomas, (Ind.) 38 N. E. (2d) 878, Rivenbark v. Shell, supra, Biggins v. Wagner, (S. D.) 245 N. W. 385. See also, Annotation 85 A. L. R. 784, where it is said: "If an issue in the case is as to whether the plaintiff was a servant of the defendant or whether he was an independent contractor or servant of an independent contractor, evidence is admissible that the defendant carried indemnity insurance on his employees, including the plaintiff, such evidence having been treated in some cases as having a tendency to negative the independence of the contract, or, in other words, as having a tendency to show that the plaintiff was considered by the defendant as his employee". The contention must be ruled against relators.

We come now to the last contention of relators respecting the written agreements between the corporate relator and the individual relator from the inception to the termination of the employment (paragraph 7 of the court's order, supra). Relators concede in their brief that if any written agreements between relators show the character of the relationship between relators that such written agreements

would be material. Not only is that true but it is further true that if any such agreements even *tend* to show the character of that relationship, such agreements are material.

[390] But as to paragraph 7 of the court's order, it contains no proper or sufficient *designation* of the written agreements as is required by Section 86. It is too broad and all inclusive. It includes "all written agreements". It is not even limited to such written agreements as are material to the issue of employee or independent contractor. Mo. R. S. A. 847.86, 1 Carr's Missouri Civil Procedure, p. 734, State ex rel. Thompson v. Harris, supra, Haffenberg v. Wendling, 69 N. Y. Supp. (2d) 546, 27 C. J. S., Discovery, p. 120, Sonken-Galamba Corp. v. A. T. & S. F. Ry. Co. et al., 30 Fed. Supp. 936, 937. In the last cited case, the court said: "We consider that it was never intended . . . . that this rule (Federal Rule 34) should ever be used as a dragnet on any fishing expedition. Properly interpreted it cannot be so used. . . . . It (the motion and order) must *designate* the document sought. . . . The documents sought in these motions are described in such general omnibus language that they are not 'designated' at all. . . . . They call for 'all' documents satisfying a certain general description, coming to the defendants during periods of years". Neither plaintiff nor her counsel have any right to inspect any written agreement between relators which is not material to the instant issue. Any such document is privileged. To permit that would invade relators' right of privacy and contravene their fundamental rights.

Respondent in his return to our writ avers that at the time of the hearing before him upon the motion there was produced evidence "which tended to show the existence of the books, statements, records and documents" (which would include the written agreements between relators) described in his order. But at no place in any document before us (except in plaintiff's motion) do we find it even alleged that the written agreements referred to in paragraph 7 are material to the instant issue. That fact the respondent may hereafter inquire into upon a later motion.

Upon such pre-trial procedure as is contemplated by Section 86 there are methods and legal processes under which, on the hearing of such a motion, the trial judge may have before him for visual examination and for the determination by him as to materiality, all such challenged documents as those called for in paragraph 7. By those processes the determination of the materiality of any challenged document can be taken from relators alone; and that question can be determined by the trial judge alone.

This assumes, of course, the use of a procedure which complies with the statutes and an order in conformity with the statutes. But we cannot approve an order which fails to comply with Section 86. Paragraph 7 of this order fails to comply with the statutory requirements

as to designation. Accordingly, therefore, the contention of relators as to paragraph 7 of the court's order must be sustained.

If or when any of the documents herein held to be material are offered in evidence upon the trial respondent must then determine whether in fact said documents show such a materiality as that they *tend* either to establish or disprove the issue of the right of control. Upon the trial court's determination of the materiality of each such document will depend its admissibility.

The end which litigation seeks is justice. Upon the judicial inquiry into the facts upon the trial of a cause in the court nisi the ascertainment of the truth is paramount. The search for the truth should proceed unhampered within constitutional and statutory limitations. It is the trend of modern practice in nearly every jurisdiction to so enlarge the scope of discovery provisions that the discovery procedures will be a useful and practical implement in the search for and presentation of the truth. That is the spirit in which our New Code was conceived and implemented. The law frowns more and more upon ambush and delay and approves more and more candor and fairness between parties litigant. The modern discovery statutes and modern legal thinking have abrogated the old common law theory that litigation was a game wherein the litigants had a right to conceal and withhold "their evidential resources". We make these observations with no spirit of criticism of relators [391] and with no intention to reflect upon relators. They had every right to take every step they have taken.

The order of respondent upon the "Motion for Production of Documents" was proper and within respondents' jurisdiction insofar as it required relators to produce for inspection the documents mentioned in paragraphs 1, 2, 3, 5 and 6 of the order, supra. It was beyond the jurisdiction of respondent to order relators to produce the statement of account mentioned in paragraph four and the written agreements mentioned in paragraph seven of said order.

Therefore, our provisional rule heretofore issued is discharged except as to the statement of account ordered produced in paragraph four, and as to the "written agreements" ordered produced in paragraph seven. As to said statement of account mentioned in paragraph four, and as to the "written agreements" mentioned in paragraph seven, our provisional rule is made absolute. It is so ordered. *McCullen*, Special Judge (sitting in place of *Hyde, J.*, disqualified) concurs, and *Tipton, Clark, Douglas* and *Ellison, JJ.*, and *Leedy, C.J.*, concur.