STATE ex rel. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Relator, v. HONORABLE WILLIAM B. FLYNN, Judge Division No. 1 of the Circuit Court of the City of St. Louis, Missouri, Respondent, No. 43434—257 S. W. (2d) 69.

Court en Banc, April 13, 1953.

*Warner Fuller, Arnot L. Sheppard* and *Lyman J. Bishop* for relator.

*John H. Haley, Jr.,* and *Thomas R. McGinnis* for respondent.

 DALTON, J.—This is an original proceeding in prohibition. Relator is defendant in a cause entitled Harold G. Davis, plaintiff v. Terminal Railroad Association of St. Louis, a corporation, defendant, which cause is pending in the circuit court of the city of St. Louis before respondent, Honorable William B. Flynn, a judge of said circuit court. By this proceeding the relator seeks to prevent the respondent from entering an order in said cause requiring it to produce four photographs for inspection, copying or photographing by plaintiff. It is admitted that the photographs are in relator's possession; and that, unless prohibited, respondent will order the production of the said photographs for the purposes mentioned.

The mentioned cause pending before respondent was instituted on April 3, 1952, and is an action under the Federal Employers Liability Act for $249,890.00 damages for personal injuries sustained by plaintiff on account of the alleged negligence of the defendant. Plaintiff alleged that he was acting as the long field man in a switching crew comprised of employees of defendant and that he was struck and run over by the wheels of a railroad car which, in a switching movement, had been released from the locomotive and had been caused to enter upon track 3 before plaintiff had determined that another car and its coupler were in a position to receive and hold such railroad car. Numerous assignments of negligence are set out and specific injuries are alleged. The answer filed by defendant (relator) admitted "that plaintiff was injured at the time and place mentioned in the petition", to wit, on March 25, 1952; and "that plaintiff's left arm and left leg were injured to such an extent that it was necessary to amputate them."

Thereafter, in response to plaintiff's interrogatories, the defendant advised plaintiff that an employee of its special service department, Edward L. Rheinhardt, "took four photographs before plaintiff was removed from the point of accident"; and that these photographs were in the possession of W. P. Bittle, defendant's claim agent in the city of St. Louis. Plaintiff, thereupon, filed a motion requesting the court to order defendant (relator) to produce and permit plaintiff to inspect, copy or photograph the four photographs. The reason assigned in the motion is "that such [71] photographs disclose the physical conditions existing at such place and time * * * and will

constitute relevant evidence in the trial of this action and such exact evidence of the physical conditions at such time and place has not been and is not otherwise available to plaintiff.'' There was no allegation that such physical conditions had changed.

A hearing was had on the motion and a transcript of the testimony has been filed as an exhibit with relator's petition. The correctness of the transcript and relator's review of the facts is admitted by respondent's return. At the hearing defendant's (relator's) counsel objected to the production of the photographs, as follows: ''The Court has no jurisdiction to compel the defendant to bring into court for * * * inspection its private file which it is preparing for the purpose of defending this case.'' The four photographs are ''privileged and * * * not competent evidence for any purpose at this time'' and ''don't show anything that would be competent evidence'', they ''are privileged'' and ''are memoranda prepared for us for the purpose of preparing for trial.'' They ''are a part of our preparation for trial.''

Plaintiff's counsel called Rheinhardt as a witness for the announced purpose of showing ''the circumstances under which the pictures were taken, the time and the place.'' Over defendant's objection that defendant didn't have to ''give plaintiff's counsel the benefit of our knowledge with respect to'' the photographs, that plaintiff had no right to show what the photographs show and that 'this is privileged and it is a part of our preparation for trial and this court hasn't jurisdiction to compel us to disclose it to our adversaries'', the respondent permitted Rheinhardt to testify in support of the motion. Whether or not respondent erred in overruling defendant's objections to the examination of the witness is not before us in this proceeding.

Rheinhardt's testimony tended to show that he was employed by defendant (relator) as a sergeant in the special service department; that on March 25, 1952, he received a call at his office that a man had been injured in defendant's Gratiot street yard in the city of St. Louis. He went there immediately and found an injured man. He took four photographs, three before the ambulance arrived and one afterwards. One picture was taken ''as the stretcher was being placed right beside the man.'' ''It showed the doctor was there.'' The injured man was lying beside ''a track they call No. 3.'' A picture was taken of a locomotive there ''on the lead.'' He did not know the designation of the lead. The photographs were taken in the early evening, before dark, but ''it was just at dusk.'' He took the photographs because he considered it to be a part of his duty ''as a Terminal employee so to do.'' He developed the pictures himself. In answer to a question as to whether the pictures were ''a fair representation of what you saw that night'', he answered ''Well, it is just a picture of what was there, is all I can tell you. I don't know.'' As to

whether "it" showed "the conditions as they appeared to the eye that night", he said, "It shows the conditions; Yes, sir. At that time and place. Yes, sir."

There was other testimony that the four photographs in question had been delivered by "the special service department of the Terminal" to William P. Bittle, relator's claim agent. Bittle brought the photographs into court in response to a subpoena duces tecum. They were not exhibited or marked pending relator's application for our writ. Respondent let the record show that "the court intends to sustain the motion to inspect and copy the documents in question, but * * * will not actually enter the order at this time" in order that relator may have an opportunity to apply for a writ of prohibition.

Respondent was proceeding under Section 510.030 RSMo 1949, V.A.M.S., which is in part, as follows: "Upon motion of any party *showing good cause therefor* and upon notice to all other parties, the court in which an action is pending may * * * order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, *not privileged,* which constitute [72] or contain *evidence material to any matter involved in the action* and which are in his possession, custody, or control * * *." (Italics ours.)

Relator contends (1) that the photographs do not "constitute or contain evidence material to any matter involved in the action", as required by Section 510.030, supra, since they "may be used only as illustrations of the testimony of a witness * * * and are hearsay like written statements"; (2) that the photographs are "privileged" as a "work product" prepared "in view of possible litigation" and, hence, are exempt from discovery; and (3) that the motion to produce the photographs and the evidence in support thereof did not show "good cause", as required by the statute. Respondent, on the other hand, contends that the photographs "are admissible in evidence in the action in which they have been ordered produced, because upon the evidence in this proceeding they 'show the conditions as they appeared to the eye' and 'are a picture of what was there' at the place where the injury occurred before the injured person was removed therefrom"; that the photographs are not "privileged" because they were made in the ordinary course of relator's business; and that " 'good cause' for discovery of the photographs was shown to exist."

██ In the trial court the burden rested upon the plaintiff, who was the party seeking the order, to satisfy the trial judge as to the relevancy and materiality of the documents sought to be ordered produced, and to show that they were not privileged and that there was good cause for their production. Section 510.030, supra; State ex rel. Atchison, T. & S.F.R. Co. v. Trimble, 254 Mo. 542, 553, 163 S.W. 860; State ex rel. St. Louis Union Trust Co. v. Sartorius, 351 Mo. 111, 171

S.W. (2d) 569, 573. In this proceeding, however, relator is attacking the order which respondent is about to enter and the burden is on relator to show that the photographs about to be ordered produced are not relevant or material to the issues in the pending cause and hence are not competent nor admissible as evidence therein; or that they are in fact privileged; or that good cause has not been shown for their production; or that respondent otherwise lacks jurisdiction or will exceed his jurisdiction in entering the order. State ex rel. Schlueter Mfg. Co. v. Beck, 337 Mo. 839, 85 S.W. (2d) 1026, 1033; State ex rel. Cummings v. Witthaus, 358 Mo. 1088, 219 S.W. (2d) 383, 386. Prohibition is the appropriate remedy where the trial court exceeds its jurisdiction. State ex rel. Chicago, R.I.&P.R. Co. v. Woods, 316 Mo. 1032, 292 S.W. 1033, 1035(1).

It is well settled that Section 510.030, supra, does not authorize an order for the production of any of the documents or things mentioned in said section, unless they "constitute or contain evidence material" to some matter involved in the action. State ex rel. Thompson v. Harris, 355 Mo. 176, 195 S.W. (2d) 645, 647; State v. Hinojosa (Mo. Sup.), 242 S.W. (2d) 1, 6; State ex rel. Bostelmann v. Aronson, 361 Mo. 535, 235 S.W. (2d) 384, 388; State ex rel. Cummings v. Witthaus, supra, 219 S.W. (2d) 383, 387; State ex rel. St. Louis Union Trust Co. v. Sartorius, 351 Mo. 111, 171 S.W. (2d) 569, 573. It is equally true that good cause must be shown for the production of relevant and material documents; and that privileged documents may not be ordered to be produced. In State ex rel. Thompson v. Harris, supra, this court pointed out that there is nothing in Section 510.030 "which authorizes the production of evidence which would be inadmissible at the trial, even if it were to be used for the purpose of discovery." (195 S.W. (2d) 645, 647). In determining the issues in this proceeding we may look to the pleadings, the application for the order, the evidence in support thereof and the order as entered, all of which are before us on the record presented. State ex rel. Bostelmann v. Aronson, supra, 235 S.W. (2d) 384, 388.

In this case respondent no doubt ordered the photographs produced for inspection, copying or photographing by plaintiff on the theory that all three requirements of Section 510.030, supra, had been fully met. In view of the conclusions we have reached it will not be necessary to review the facts presented by this record with reference to whether the photographs in question "constitute [73] or contain evidence material to any matter involved in the action" or whether "good cause" was shown for their production. Nor do we need to review the arguments made and the authorities cited by the respective parties in support of their respective positions on these issues. In our opinion the decisive question here is whether or not the photographs were "privileged" and, therefore, exempt from discovery under the provisions of Section 510.030, supra. If the photographs were in fact

privileged, good cause was not shown for their production and it is immaterial whether or not they were relevant and material to any matter involved in the action.

It is well settled that "the discovery of confidential communications, oral or written, between an attorney and his client with reference to * * * litigation pending or contemplated, cannot be compelled at the instance of a third party." 27 C.J.S. 11, Discovery, Sec. 5; 70 C.J. 397, Sec. 532. The privilege of exemption from discovery is based upon the ground of public policy. State v. Faulkner, 175 Mo. 546, 593, 75 S.W. 116; 70 C.J. 376, Sec. 497. In this state such public policy is confirmed by statute. Section 491.060 (3) RSMo 1949, V.A.M.S. For a statement of the reason for the rule see State v. Dawson, 90 Mo. 149, 155, 1 S.W. 827; Cross v. Riggins, 50 Mo. 335, 337; 70 C.J. 399, Sec. 537.

"The rule of privilege extends to documents prepared by an agent or employee by direction of the employer for the purpose of obtaining the advice of the attorney or for use in prospective or pending litigation, whether such document is transmitted to the attorney by the client or by the agent or employee. The document is deemed to rest on the same reason as a communication of the client to his counsel, and is privileged." 58 Am. Jur. 281, Witnesses, Sec. 502. And see Jones on Commentaries on Evidence, Vol. 5, p. 4135, Sec. 2174.

"A statement concerning an accident obtained by an employer from his servant for the bona fide purpose of being later transmitted to the employer's attorney for advice, or to be used by the attorney in connection with pending or threatened litigation, is privileged, because it is part of the communication from the client to his counsel. The same is true of a statement by the accredited agent of a corporation, giving his account of an accident for use of counsel in pending or threatened litigation * * *." 58 Am. Jur. 282, Witnesses, Sec. 503. And see State ex rel. Thompson v. Harris, supra.

The applicable rule in this state, insofar as our present problem is concerned, appears from the case of State ex rel. Miller's Mut. Fire Ins. Ass'n. v. Caruthers, 360 Mo. 8, 226 S.W. (2d) 711, where the matter is discussed as follows: "However, the Fifth Interrogatory also improperly calls both for subjective purposes and for intracompany instructions given to relator's agents about the preparation of its defense. The United States Supreme Court held in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, that, even under the broader discovery provisions of the Federal Rules, it was not proper to require the disclosure of the thoughts, mental processes and work product of lawyers in the preparation of the defense of a case. We hold that under our Code this principle also applies to such preparation by parties and their adjusters or investigators." And see Carr, Missouri Civil Procedure, Sec. 782, pp. 705-706; State ex rel. Mo. Pac. R. Co. v. Hall, 325 Mo. 102, 27 S.W. (2d) 1027, 1029; State v. McDonald, 342

Mo. 998, 119 S.W. (2d) 286, 289; State ex rel. Laughlin v. Sartorius, 234 Mo. App. 798, 119 S.W. (2d) 471, 473; Meadows v. Metropolitan Life Ins. Co. (Mo. App.), 104 S.W. (2d) 788, 790.

The pleadings in the case at hand admit that the petition in the cause pending before respondent purports to state a cause of action for damages for personal injuries sustained by plaintiff on March 25, 1952 on account of the alleged negligence of defendant. The cause of action, if any, arose at the time of the injury. After the cause of action had accrued, witness Rheinhardt, a sergeant in defendant's special service department, received the call that a man had been injured in defendant's Gratiot street [74] yard. He proceeded at once to that location, found an injured man and took the photographs in question, developed them and delivered them to defendant's claim agent. In this connection it may be said that photographs are ordinarily treated as being in the same class of evidence as maps, diagrams and drawings. Baustian v. Young, 152 Mo. 317, 53 S.W. 921; Jensen v. Kansas City, 361 Mo. 967, 238 S.W. (2d) 305, 306; Edge v. Southwest Mo. Elec. Ry. Co., 206 Mo. 471, 501, 104 S.W. 90; Davidson v. St. L.& S.F.R. Co., 164 Mo. App. 701, 713, 148 S.W. 406; 32 C.J.S. 611, Sec. 709; 20 Am. Jur. 607, Evidence, Sec. 727 et seq.

Respondent says that, "presumably", the photographs were made in the ordinary and usual course of defendant's railroad business; that there is no evidence in the record in this proceeding from which any other conclusion can be reached; and, therefore, that the photographs are not privileged. We do not agree. It is admitted that relator is "a corporation duly organized and existing according to law and engaged in interstate commerce as a common carrier by railroad in the State of Missouri." Plaintiff offered no evidence tending to show that the taking of the photographs in question was a part of the ordinary and usual course of defendant's business in the operation of a railroad or that the taking of the photographs was in anywise intended to facilitate the operation of such railroad or to further its interests as such. Instead, plaintiff's own evidence showed that the photographs were taken, developed and delivered to defendant's claim department. Further, it clearly appears that defendant could reasonably anticipate litigation in view of the injuries sustained by plaintiff. In this day and time no one would be so naive as not to know that at the time the photographs were taken a "potential law suit or claim for damages" was immediately impending and that litigation could reasonably be expected. If we do not judicially know that such was in fact true, the admitted facts demonstrate it, since it is admitted that the action pending before respondent was instituted on the 9th day after plaintiff was injured. We may not assume that the defense of personal injury claims is a part of the usual and ordinary business for which the railroad corporation was organized and exists, so as to make such photographs open to discovery where they were taken in prepara-

tion for the defense of anticipated litigation and after the cause of action accrued.

In support of respondent's contention that the photographs were taken in the ordinary and usual course of defendant's railroad business and, hence, that the photographs are not privileged, respondent particularly relies upon State ex rel. Iron Fireman Corporation v. Ward, 351 Mo. 761, 173 S.W. (2d) 920, where the question was whether the order entered invaded the constitutional right of relator to be protected from unreasonable searches and seizures. In that case defendant (relator) had installed a mechanical furnace stoker in plaintiff's house. The stoker overheated the furnace. After repeated complaints, service calls and repairs, the defect was not corrected and plaintiff's house was set on fire by an overheated furnace. Relator had kept a full record concerning the installation of the stoker and the subsequent complaints and service calls extending over a period of several years. The record also included the record of an inspection made after the fire, but the court said that "any inspection shortly after the fire made to ascertain the cause would presumably be an inspection in the ordinary course of business" and held that all of the records with reference to installing, servicing and inspecting the stoker were made in the ordinary course of defendant's business to preserve the facts in writing and, hence, that they were not privileged. Such contemporary records were clearly made and kept in the regular course of the business in which relator was engaged. Even in that case the court referred to State ex rel. Mo. Pac. R. Co. v. Hall, 325 Mo. 102, 27 S.W. (2d) 1027 and pointed out that "statements which the claim department of a railroad had obtained following an accident * * * were quite obviously made in [75] preparation for an expected suit and were so treated by this court." The case does not support respondent's position here.

Respondent also relies on the case of Curtis v. Indemnity Company of America, 327 Mo. 350, 37 S.W. (2d) 616, 625, where two letters which passed between defendant (an insurer) and its adjuster with reference to an insurance loss immediately, or very shortly after a fire, were held not privileged, because they were "in the nature of official communications or reports between officials or agents of defendant relating to the subject-matter under investigation in the ordinary course of defendant's business, and which investigation was not made in view of any existing or prospective litigation." Clearly such documents were written in ordinary and usual course of the business in which the defendant was engaged. The case does not aid respondent.

Other cases such as LaCoss v. Town of Lebanon, 78 N.H. 413, 101 A. 364, and Reynolds v. Burgess Sulphite Fibre Co., 71 N.H. 332, 51 A. 1075 are based upon specific statutory provisions.

We hold that the photographs in question were privileged and not subject to discovery, because they were taken in preparation for the defense of reasonably anticipated litigation and as such they fall outside of the arena of discovery. The order of respondent requiring their production for inspection, copying and photographing by the adverse party contravenes the established public policy of this state with reference to the orderly prosecution and defense of legal claims. These photographs, like diagrams, maps and drawing prepared for use in anticipated litigation and after the cause of action accrued, were the "work product" of relator in preparation of its defense and in anticipation of litigation and they are not subject to discovery and it matters not whether they are the work product of relator's agent or attorney or whether they have as yet been delivered to the custody and control of the particular attorney who is in charge of the defense of the particular case. State ex rel. Chicago, R.I. & P. R. Co. v. Woods, supra, 292 S.W. 1033, 1036; State ex rel. Miller's Mut. Fire Ins. Ass'n. v. Caruthers, supra; State ex rel. Mo. Pac. R. Co. v. Hall, supra; 58 Am. Jur. 281, Witnesses, Sec. 502. And see Seaboard Air Line R. Co. v. Timmons (Fla.), 61 So. (2d) 426.

The questioned order which respondent proposes to make with reference to the privileged photographs is in excess of the jurisdiction of the respondent and our provisional rule in prohibition should be made absolute. It is so ordered. All concur.