STATE of Missouri ex rel. ST. LOUIS
PUBLIC SERVICE COMPANY,
a corporation, Relator.

v.

Theodore McMILLIAN, Presiding Judge of
the Circuit Court of St. Louis, Missouri,
Respondent.

No. 48557.

Supreme Court of Missouri,

In Banc.

Nov. 13, 1961.

Donald W. Bird, St. Louis, for relator-defendant St. Louis Public Service Co.

Stemmler & Stemmler, James A. Stemmler, St. Louis, for respondent, Hon. Theodore McMillian.

EAGER, Judge.

This original proceeding in prohibition has been presented on the petition of relator and respondent's return. It involves the propriety of an interrogatory. Alleen McMillen filed suit against the St. Louis Public Service Company alleging that she was injured by its negligence on May 29, 1953, while attempting to leave a street car; she further claimed permanent injuries. Defendant's answer, filed on or about July 1, 1958, was a denial of everything except defendant's corporate existence and business. In August 1960 plaintiff submitted a list of eight interrogatories to be answered by defendant. We are concerned here only with No. 4. It was as follows: "State whether or not you have taken or caused to be taken any photographs or moving pictures of the plaintiff between May 29, 1953 and the present day. If so, attach copies of all such photographs and moving pictures." Defendant, relator here, objected upon the grounds that the inter-

rogatory was not within the scope of Section 510.020 RSMo 1949, V.A.M.S. as interpreted, that plaintiff was not entitled to the information sought, and that such material was a part of defendant's work product and privileged. Following the hearing on the objections, the trial court indicated that it would overrule the objections to that part of the interrogatory requesting defendant to state whether or not it had "taken or caused to be taken photographs or moving pictures" of plaintiff, and that it would sustain the objections to the remainder of the interrogatory requiring that copies be attached to the answer. The trial court withheld its actual ruling for a time sufficient to permit the filing of the present petition for prohibition. The record before us does not indicate that any evidence was heard, and we may assume that there was none. The pleadings raise no fact issue. We issued our Preliminary Rule in prohibition.

Relator's single point in its brief here is largely a reiteration and expansion of its objections made in the trial court, namely, that the information sought is a part of its work-product, that it is privileged, and that it is thus not within the scope of permissible discovery. In this, it does not clearly distinguish between the privilege against the actual production of photographs, and that involved in a question concerning their existence. Respondent says, very simply, that the writ should be quashed because such photographs would not be privileged and because relator did not offer any evidence below to show privilege. Two of our most recent cases involving photographs have concerned their actual production and inspection, not merely questions as to their existence. State ex rel. Terminal R. Ass'n of St. Louis v. Flynn, 363 Mo. 1065, 257 S.W.2d 69; State ex rel. St. Louis County Transit Co. v. Walsh, Mo.App., 327 S.W.2d 713. In each of those cases the party seeking production relied on our statute, now Section 510.030 RSMo 1959, V.A.M.S. We have a more limited issue here, but it will be

necessary to consider and explore some of the broader holdings to arrive at an answer.

We need not discuss the question of relevancy; it is clear that photographs of plaintiff, and presumably of her activities, would have some material bearing on the issues concerning her alleged injuries and disability. Our consideration will be of the question of privilege. In Flynn, supra, a motion for production was filed; the defendant admittedly was in possession of four photographs taken by an employee of its special service department almost immediately after the injury to plaintiff who was a member of a switching crew; the photographs showed the physical conditions existing at the time and also the plaintiff before he was moved. Defendant opposed any order of production, primarily because the photographs were privileged as a part of its preparation for trial, or, in other words, as its work product. The statute specifically referred to papers, photographs, etc. "not privileged," as indeed it does now. This court held that the photographs were privileged and not subject to production; that the privilege of "work product" prepared in anticipation of litigation or in preparation for trial extends to papers, reports, photographs, etc. prepared by a party's agents or employees for subsequent transmission to the party's attorney. The rule actually has its basis in the long-standing privilege of communication between attorney and client (§ 491.060). The court noted that photographs are treated as being in the same class as "maps, diagrams and drawings" (257 S.W.2d loc. cit. 74). It also held that the taking of such photographs was not shown to be a part of the ordinary business of defendant, and that defendant might have reasonably anticipated litigation at the time. The court said, in part, at 257 S.W.2d loc. cit. 75: "We hold that the photographs in question were privileged and not subject to discovery, because they were taken in preparation for

the defense of reasonably anticipated litigation and as such they fall outside of the arena of discovery. The order of respondent requiring their production for inspection, copying and photographing by the adverse party contravenes the established public policy of this state with reference to the orderly prosecution and defense of legal claims. These photographs, like diagrams, maps and drawings prepared for use in anticipated litigation and after the cause of action accrued, were the 'work product' of relator in preparation of its defense and in anticipation of litigation and they are not subject to discovery and it matters not whether they are the work product of relator's agent or attorney or whether they have as yet been delivered to the custody and control of the particular attorney who is in charge of the defense of the particular case." In that case the photographs might conceivably have been relevant on other issues than that of injuries. In our case the trial court evidently recognized that any photographs or movies taken of plaintiff would be privileged in so far as production was concerned.

Our present rules (56.01 and 57.01, V.A.M.R.), contain nothing which mitigates against the basic privilege recognized in Flynn; in fact, privilege is recognized in the same sentence of 57.01(b) which permits an examination as to "the existence * * * of * * * books, documents, or other tangible things * *." The last sentence of Rule 57.01(b) provides that the production of any writing prepared by an adverse party or his attorney or agent in anticipation of litigation or in preparation for trial, or of any writing reflecting an attorney's mental impressions, opinions or legal theories, "shall not be required." While the spirit and intent of this provision might well include photographs, we feel that to so interpret the word "writing" would be a perversion of the ordinary and common-sense meaning of the word.

We hold here that any existing photographs or movies taken of plaintiff by defendant since the date of her alleged injury would clearly be privileged as a work product. That result is indicated under the ruling in Flynn. Such photographs would certainly not have been taken in the "ordinary course" of defendant's business as a common carrier (Flynn, supra), and they could have been taken for only one *possible* purpose, namely, in anticipation of litigation or in preparation for trial. There is no question here concerning photographs of a place of injury, a situs, or an instrumentality; or photographs in existence before the cause of action arose. Any such photographs as are now inquired about could only concern the defense of plaintiff's claims of injury and disability. We have no such situation as was presented in State ex rel. St. Louis County Transit Company v. Walsh, Mo.App., 327 S.W. 2d 713, 717, where a bus driver concededly took photographs of the place where plaintiff fell, immediately after her fall. There, at the driver's deposition, counsel instructed him not to answer questions asking why he took the pictures; the court, in addition to indulging the presumption invoked against a party who suppresses evidence, noted that the question of privilege turned "upon the question of why Cox * * * took the pictures," and that the driver was one who would ordinarily have nothing to do with investigations or the defense of claims. It further held that the pictures there might have been taken for other reasons than by way of defense of anticipated litigation as, for instance, to protect the driver's job; and that no privilege had been established, particularly in view of defendant's suppression of the reasons for the taking, and the resulting presumption. Much reliance was also placed upon the element of discretion in the issuance or refusal of the writ.

In State ex rel. Uregas Service Co., Inc. v. Adams, Banc, 364 Mo. 389, 262 S. W.2d 9, involving the explosion of a gas water heater, this court granted prohibition precluding answers to two questions asking whether defendant took any pictures of the heater, and, if so, how many and what photographer took them. It permitted interrogatories concerning an inspection of the heater and the taking of samples of the liquid gas, with names of the persons involved. The court there said, in part, 262 S.W.2d loc. cit. 12: "However, the situation is different as to questions 11 and 12. In State ex rel. Terminal R. Ass'n v. Flynn, [363] Mo. [1065], 257 S.W.2d 69, 75, we held that photographs were privileged and 'outside the arena of discovery', when taken preparatory to or in anticipation of litigation. We said, like diagrams, maps and drawings, they 'were the "work product" of relator in preparation of its defense.' Under that ruling, to which we adhere, plaintiff was not entitled to information as to whether relator took pictures and how many it took. It is argued that plaintiff was entitled to know who the photographer was because he might have observed conditions on the premises about which he could testify independently of what was shown in any pictures he took. The question does not indicate any such purpose, or any other purpose than to obtain the pictures; and the request for the photographer's identity is combined in the same question with the improper request as to the number of pictures taken. Therefore, we do not think relator should be required to answer questions 11 and 12." Thus the issue was ruled on the obvious purpose of plaintiff to obtain defendant's pictures.

Where the sole purpose of an inquiry is to procure the production of material which, if it is in existence at all, is privileged, we see no legitimate purpose in permitting the inquiry and prolonging the controversy. We have held that such photographs as are inquired about here would be privileged. We further hold that the inquiry as to whether defendant had taken photographs or movies of plaintiff during a seven year period was not a permissible inquiry. This ruling is not

intended to foreclose inquiry into the existence of documents or photographs where it fairly appears that there may be some legitimate purpose in the inquiry, aside from the production of privileged material. Although respondent contends that the burden rests on relator here to show privilege, we think nevertheless that this record and the very nature of the inquiry made, meets that burden. There is no dispute about the facts or what is sought; after relator has thus met its initial burden, the respondent would have the burden of proceeding to demonstrate a lack of privilege or a legitimate purpose in the inquiry, if privilege exists. We need not indulge here in any presumption of right action in the trial court, for we have the same record which it had. See, generally, State ex rel. Cummings v. Witthaus, Banc, 358 Mo. 1088, 219 S.W.2d 383, 8 A.L.R.2d 1124.

 As lending at least indirect support to our ruling, we note the following. No legitimate purpose of discovery is served by inquiries which merely pry into an adversary's preparation for trial; and the discovery procedure has not been formulated for the benefit of a litigant who is already in possession of all the facts. State ex rel. Laughlin v. Sartorius, 234 Mo.App. 798, 119 S.W.2d 471; and see State v. McDonald, 342 Mo. 998, 119 S.W.2d 286. The production of evidence which would be material only by way of impeachment has been refused. State ex rel. Missouri Pacific R. Co. v. Hall, Banc, 325 Mo. 102, 27 S.W.2d 1027; State ex rel. Thompson v. Harris, Banc, 355 Mo. 176, 195 S.W.2d 645, 166 A.L.R. 1425. While the two cases just cited were decided prior to the adoption of our present rules, the broadened provision of Rule 57.01(b) permitting inquiries which might be "reasonably calculated to lead to the discovery of admissible evidence" would have no pertinence here. Certainly plaintiff McMillen knows all the material facts concerning her own injuries, any existing disability, and her activities; at least the primary, if not sole, function of any such photographs would be to impeach her testimony, when and if offered by defendant. We do not, however, approve the statement that the evidence sought upon discovery "must relate to the case of the party who seeks the inspection." State ex rel. Laughlin v. Sartorius, 234 Mo.App. 798, 119 S.W.2d 471, 473.

We are dealing here with a rather limited class of photographs,—those sometimes called "surveillance" photographs. Our decision is confined to the specific issues presented here. There may be divergent views on the propriety of taking such photographs, but that is one problem which we need not solve. We recognize that there are Federal decisions which are contrary in principle to our ruling here. McCall, Adm. v. Overseas Tankship Corp. (D.C. N.Y.), 16 F.R.D. 467; Harris, Adm. v. Marine Transport Lines, Inc. (D.C.N.Y), 22 F.R.D. 484. We feel, however, that our ruling is more consonant with our prior decisions and also with the spirit of our present rules which differ somewhat from the Federal Rules; for instance, the last two sentences of our Rule 57.01(b) constitute an express protection of "work product," not contained in Federal Rule 26 (b), 28 U.S.C.A.

 Our files and record show that after the issuance and service of our Preliminary Rule an order was entered in the court below dismissing the case out of which these proceedings arose, for failure to prosecute. That order is void. Upon receipt of our mandate the court will set that order aside and reinstate the case. What action it may take thereafter with reference to a dismissal is a matter of its own concern. Our Preliminary Rule, prohibiting respondent from entering an order overruling defendant's objections to plaintiff's Interrogatory No. 4, or any part thereof, is made absolute. It is so ordered.

All concur.