STATE of Missouri ex rel. R. W. FILKEY, INC., a Corporation, and Hawkinson Tread Tire Service Company, a Corporation, Relators,

v.

The Honorable Michael J. SCOTT, Judge of Division 1 of the Circuit Court of the City of St. Louis, Missouri, Respondent.

No. 31903.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1966.

Thomas, Busse, Weiss, Cullen & Godfrey, Carl R. Gaertner, Donald Clooney, St. Louis, for relators.

Robert L. Hyder, Chief Counsel, C. J. McEnery, Jr., Asst. Counsel, Jefferson City, Edwin Brzezenski, Asst. Counsel, Kirkwood, for respondent.

DOERNER, Commissioner.

This original proceeding in prohibition comes to the writer by a very recent reassignment. Relators are two of the defendants in a cause entitled State of Missouri ex rel., State Highway Commission of Missouri v. Leona Miehe, et al., pending in the Circuit Court of the City of St. Louis before the respondent judge, wherein the State Highway Commission seeks to condemn among others the two parcels of property owned by the respective relators. By this proceeding the relators seek to prevent the respondent from entering an order in said cause quashing certain subpoenas duces tecum heretofore issued therein. It is admitted that unless prohibited the respondent will enter such an order.

Both parties have been guilty of stating in their briefs alleged facts which do not appear in the record before us. The petition, the return to the preliminary rule, and the reply form the pleadings in a prohibition proceeding, Sec. 530.030 et seq., RSMo 1959, V.A.M.S., and except for the contract sub-

sequently referred compose the entire record before us, State ex rel. McCubbin v. Mc-Millian, Mo.App., 349 S.W.2d 453. As developed by the pleadings, the only substantive facts which we may consider are these: In 1958 a contract was entered into between the State Highway Commission (therein called the Commission), the Land Clearance for Redevelopment Authority of St. Louis (therein called the Authority) and the City of St. Louis (therein called the City). The recitals in that agreement read:

"WHEREAS, Commission contemplates the construction of an extension of the highway known as the Daniel Boone Expressway from the vicinity of the intersection of Grand and Market Streets in the City of St. Louis to a point in the vicinity of Spruce and 21st Streets in the City of St. Louis (with possible future extensions), and

"WHEREAS, Authority contemplates the immediate acquisition of real estate along said proposed route and in the area known as the Mill Creek Valley area in the furtherance of its objective of redevelopment, and

"WHEREAS, City is to be obligated to pay a portion of the necessary cost of right-of-way for the construction of the proposed extension of the Daniel Boone Expressway by Commission,"

After two paragraphs concerning a future contract between the City and the Commission regarding the sharing of the cost of acquisition of the right-of-way for the highway, the agreement contains the following provisions pertinent to this proceeding:

"3. Commission agrees that, after execution of the aforementioned agreement by the City and Commission, it will reimburse Authority for the real estate acquired by said Authority which lies within the right-of-way of said proposed improvement along the route finally agreed upon by City and Commission. The term 'reimbursement' as herein used shall mean Authority's actual cost of the

real estate procured in the manner hereinafter set forth and incidental cost of acquisition and demolition incurred by Authority, including the cost of appraisals, abstracting, cost of preparation of deeds, cost of preparation of contracts, and demolition of any structures on the land to be acquired for right-of-way purposes. In the event any question shall arise because of the demolition or acquisition of buildings partly within and partly outside the right-of-way, agreement for proration shall be effected by representatives of the Commission and Authority. Reimbursement shall be made by Commission on receipt of a proper conveyance of land within the right-of-way required from Authority.

"4. Commission will as soon as reasonably possible furnish Authority with plans showing the extent of right-of-way required for the proposed highway improvement.

"5. Authority will, in accordance with its existing plans, procure all the property described as the Mill Creek Valley Area as indicated on sketch or plan sheet attached hereto and marked Exhibit 'A' and being the land to be taken in accordance with the Redevelopment Plan on which Authority is now engaged.

"6. Authority will employ competent appraisers to appraise each tract of land taken, prior to acquisition, and will in all respects comply with regulations and requirements of the governmental agency through which it operates.

"7. Authority agrees that it will acquire all real estate taken by the entirety at its reasonable market value and will acquire partial takings for the difference between the value of the entire tract prior to the taking and the value immediately thereafter. It will permit Commission, or its representatives, or representatives of the Bureau of Public Roads to examine its records, appraisals, and other documents and information relating to land acquisition at any time."

Subsequent to the execution of the foregoing contract the Land Clearance for Redevelopment Authority employed Joseph Feco, William Randall, Thomas McReynolds, and Roy Wenzlick to appraise the relators' property. Thereafter, at some time not disclosed by the record before us, it filed a condemnation suit in the Circuit Court of the City of St. Louis, styled Land Clearance for Redevelopment Authority of St. Louis v. Sterling Lacquer Manufacturing Company, et al., in which it sought to acquire the relators' property, among others. Subsequently, on June 4, 1962, the Redevelopment Authority dismissed its suit as to the relators, but the reason for such dismissal does not appear in the record before us.

On April 29, 1963, the State Highway Commission filed the condemnation suit now pending before respondent, in which the relators are named as defendants. Commissioners were duly appointed and assessed relators' damages for the taking of their property at the total sum of $130,000. Both of the relators, and the State Highway Commission, filed exceptions to the awards and the respective trials as to relators' damages were set on the trial dockets of March 16 and 23, 1964. In preparation for such trials the relators caused to be issued by said court various subpoenas duces tecum directed to the appraisers Feco, Randall, McReynolds, and Wenzlick, commanding each of them to appear at such trials and to produce their appraisals and other papers therein described. The State Highway Commission filed its motion to quash such subpoenas, and after a hearing on said motion the respondent indicated his intention to enter an order quashing them. This proceeding followed.

■ It would appear from our statutes that a litigant has a right as of course to require the attendance at the trial of those witnesses, and the production of such documents, as in his judgment are required by him to meet the issues raised in the action. Thus Section 491.090, RSMo 1959, V.A.M.S.

provides that in all cases where witnesses are required to attend the trial in any cause in any court of record, a summons *shall* be issued by the clerk of the court. And the first paragraph of Section 491.100, after specifying that such summons shall be in the form of a subpoena, and what it shall contain, continues:

"* * * The clerk of the court wherein the matter is pending, or the notary public of the county wherein such trial shall be had, *shall* issue a subpoena, or a subpoena for the production of documentary evidence, signed and sealed, but otherwise in blank, *to a party requesting it,* who shall fill it in before service." (Emphasis ours.)

The only statutory limitation on the right of a litigant to require the production of documentary evidence at the trial is contained in the second paragraph of Section 491.100, which reads:

"Where a subpoena commands the person to whom it is directed to produce the books, papers, or documents designated therein, the court upon motion may, promptly, and in any event at or before the time specified in the subpoena for compliance therewith, quash the subpoena if it is unreasonable and oppressive or condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, or documents."

In his return to our provisional rule the respondent does not maintain that he intends to enter the order quashing the subpoenas duces tecum because they are "unreasonable and oppressive." What he contends, in the first instance, is that the Land Clearance for Redevelopment Authority was the agent of the State Highway Commission and was acting as such in its suit to acquire the relators' property by condemnation; that the documentary evidence here involved was prepared by such witnesses for and on behalf of its agent, the Redevelopment Authority, in anticipation of litigation that

might follow; and that such writings are therefore its work products which are privileged, and not subject to a subpoena duces tecum.

■ The record before us does not indicate that any testimony was adduced or evidence introduced at the hearing before respondent on the State Highway Commission's motion, other than the foregoing contract, and we may assume that there was none. State ex rel. St. Louis Public Service Co. v. McMillian, Mo., 351 S.W.2d 22, 23. Thus the State Highway Commission below, and the respondent here, rely solely on that agreement to substantiate the claim that the Redevelopment Authority was the agent of the State Highway Commission, and that it was acting in that capacity when the writings in dispute were prepared and when it instituted its condemnation suit to acquire relators' property. In our opinion there are a number of good reasons which effectively refute such a claim. If it were true, as they maintain, that by that contract the Redevelopment Authority became the agent of the State Highway Commission for the purpose of acquiring, on behalf of the State Highway Commission, land for state highway purposes an interesting question would be presented regarding their legal power and authority to enter into such a contract. Both are public entities, created by legislative enactment, for explicit but unrelated purposes, and vested with only such powers as are specifically conferred by our constitution and legislative enactments and with those necessary or proper to enable them to carry out fully and effectively the purposes for which they were created. State ex rel. St. Louis County v. State Highway Commission, 315 Mo. 707, 286 S.W. 1; State ex rel. State Highway Commission v. Camden County, Mo.App., 394 S.W.2d 71. By statute, each is empowered to condemn private property for the purpose for which such public entity was created. In the case of the State Highway Commission, " * * * Its duties, generally stated, are the construction, improvement, and maintenance of highways * * *," State ex rel. McKinley

Pub. Co v. Hackmann, 314 Mo. 33, 282 S.W. 1007, 1010, and it is given authority to condemn land for such purposes, Section 227.-120, RSMo 1959, V.A.M.S. In the case of the Redevelopment Authority its purpose, in general, is the rehabilitation of blighted areas, and it is authorized to exercise the power of eminent domain in furtherance of that objective. Section 99.420(4), RSMo 1959, V.A.M.S. No authority of the one to appoint an agent for the fulfillment of its specific duty, or of the other to serve in that capacity for such a purpose, has been cited, and we find none. If, therefore, the State Highway Commission by the foregoing contract had attempted to appoint the Redevelopment Authority its agent for the purpose of acquiring land for state highway purposes we would have grave doubts as to the validity of such an agreement. State of Missouri ex rel. State Highway Commission v. County of Camden, supra.

■ But we think it clear from the contract that the State Highway Commission did not thereby purport to appoint the Redevelopment Authority its agent for such a purpose. While it is evident from the first recital of that agreement that the State Highway Commission was then contemplating the construction of an extension of the Daniel Boone Expressway in the Mill Creek area, it is equally clear from the contract that irrespective of that fact the Redevelopment Authority intended to acquire the land in that area for its own purpose. Thus in the second recital it is stated that the Redevelopment Authority contemplated the acquisition of real estate in the Mill Creek area "in the furtherance of its objective of redevelopment;" and in paragraph 5 the Redevelopment Authority bound itself, " * * * in accordance with its existing plans * * *" to procure all of the property in the Mill Creek area " * * * being the land to be taken in accordance with the Redevelopment Plan on which Authority is now engaged." Properly analyzed, all that the contract provided was that the Redevelopment Authority was to acquire the real estate in the area in accord-

ance with its own plans and for its own purpose; that when the State Highway Commission had determined the location and extent of the highway in that area the Redevelopment Authority would convey to the State Highway Commission so much of the property it had acquired as was needed for the highway; and that the State Highway Commission would pay the Redevelopment Authority its actual cost of acquiring the land conveyed, including the Authority's expenses for appraisals, abstracting, demolition, and other items. Essentially, it was nothing more than an agreement to buy and sell, and no agency relationship was created.

Furthermore, even if it is assumed that the two public entities were legally empowered to enter into an agency relationship, and that by their contract they did so, there is nothing in the record before us which indicates that when the Redevelopment Authority sought to condemn relators' property it did so on behalf of the State Highway Commission rather than on its own behalf. The petition filed by the Redevelopment Authority is not before us. It is evident that when the contract was entered into the State Highway Commission had not determined upon the precise location of the contemplated highway, for the first recital contains only general terminal points ("* * * from the vicinity of the intersection of Grand and Market * * * to a point in the vicinity of Spruce and 21st Streets * * *"), and in paragraph 4 it was provided that the State Highway Commission "will as soon as reasonably possible furnish Authority with plans showing the extent of right-of-way required for the proposed highway improvement." We have no way of knowing whether, or when, it did so, and if it did, whether the relators' property was then included within the proposed right-of-way. It does not necessarily follow that because the State Highway Commission now seeks to condemn the relators' property for highway purposes that the Redevelopment Authority sought to do so for the same purpose. As we have noted, the Redevelopment Authority intended to ac-

quire all of the real estate in the area, and for aught that appears before us it sought to condemn the relators' property in the furtherance of its own plans for the redevelopment of the area.

■ Granting that the documentary evidence may be work products and therefore privileged so far as the Redevelopment Authority is concerned, State ex rel. Terminal R. Ass'n of St. Louis v. Flynn, 363 Mo. 1065, 257 S.W.2d 69; State ex rel. State Highway Commission v. Jensen, Mo., 362 S.W.2d 568, under the record before us we are constrained to hold that such writings were not work products of the State Highway Commission and that they are not privileged as to it in its action now pending before respondent. State ex rel. St. Louis County Transit Co. v. Walsh, Mo.App., 327 S.W.2d 713.

■ Respondent also urges that Section 491.100 merely sets forth the procedure to be followed in the issuance of subpoena duces tecum; that Section 510.030 limits what documentary evidence is subject to a subpoena duces tecum; and that under that section the writings in question are not subject to a subpoena duces tecum because they do not contain substantive evidence. As is obvious from the most casual reading of Section 510.030, (and of Civil Rule 58.01, which superseded it) that section is applicable only to the production and inspection of documents prior to trial, and has no relevancy to Section 491.100 which governs the production of documentary evidence at a trial. The only limitation stated in that statute, as we have noted, is that the subpoena must not be unreasonable and oppressive. Clayton v. St. Louis Public Service Co., Mo.App., 276 S.W.2d 621.

■ We are not called upon in this proceeding to decide whether the instant subpoenas duces tecum are unreasonable and oppressive within the meaning of Section 491.100. See in that connection State ex rel. Burke v. Scott, 364 Mo. 420, 262 S.W. 2d 614; State ex rel. Cummings v. Witt-

haus, 358 Mo. 1088, 219 S.W.2d 383, 8 A.L.R.2d 1124; Ex Parte Brown, 72 Mo. 83. Such a ground for quashing or vacating a subpoena duces tecum is one personal to the witness, which ordinarily must be raised by him. 97 C.J.S. Witnesses § 25, p. 396; 58 Am.Jur., Witnesses, Sec. 27, 28, pp. 37, 38. The witnesses named in these subpoenas have not done so.

The questioned order which respondent proposes to make with reference to the subpoenas duces tecum is in excess of the jurisdiction of respondent and our provisional rule in prohibition should be made absolute.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, our provisional rule in prohibition is made absolute.

WOLFE, P. J., RUDDY, J., and ROY W. McGHEE, Special Judge, concur.