URI HILL v. P. V. MONTGOMERY and W. D. McCORD, Appellants.—No. 38609.—176 S. W. (2d) 284.

Division Two, December 6, 1943.

Motion for Rehearing Denied, January 3, 1944.

*Caldwell, Downing, Noble & Garrity, Cowgill & Popham* and *Sam Mandell* for appellants.

*Ryland, Stinson, Mag & Thomson, Paul R. Stinson* and *Lawrence R. Brown* for respondent.

150

WESTHUES, C.—Respondent Hill obtained a judgment against appellants in the sum of $19,500.00 as damages for personal injuries sustained when he fell from a passenger elevator at appellants' hotel. An appeal was duly taken.

The main contention of the defendants on this appeal is that the evidence was insufficient to establish actionable negligence on the part of the defendants. The principal facts were not in dispute. Plaintiff Hill was 86 years of age at the time he sustained the injuries complained of, which occurred on July 24, 1941. He had lived at the Brookside Hotel, in Kansas City, Missouri, for many years. Defendants were the owners and operators of the hotel, which accommodated transient as well as permanent guests. Hill occupied a room on the fourth floor. A passenger elevator was provided and operated by the defendants for the accommodation of the guests. On the night of July 24, 1941, plaintiff Hill had spent some time on a porch located on the ground floor of the hotel. Shortly after 9 o'clock, desiring to retire to his room, he proceeded to the elevator, which was standing at the lobby floor with the door open. A number of guests preceded plaintiff into the elevator. As plaintiff attempted to step into the

elevator, and at the moment he had one foot on the elevator and the other on the lobby floor, the elevator moved upward, causing plaintiff to be thrown violently upon the tile floor of the lobby. David Raab, a boy about 12 years old, testified that he started the elevator at the time plaintiff was injured. Raab was a son of one of the permanent guests of the hotel. Thus far the facts were not in dispute. The contested issue in the case was whether Samuel Brown, about 19 years of age, who was an employee at the hotel, and whose duty it was to operate the elevator, directed or permitted David Raab to start the elevator. David Raab testified that Brown had frequently permitted him to run the elevator, and on this occasion, he (Raab) was at the controls when plaintiff was getting on, and Brown, who was on the elevator about two feet from Raab, holding a pitcher of ice, said to the witness, "Go on." Whereupon, he turned the control and the elevator moved upward, throwing plaintiff to the floor of the lobby.

Appellants earnestly insist that this witness Raab destroyed his own evidence with reference to Brown's telling him to go on. It is contended that the witness testified directly to the opposite on cross-examination and, therefore, the evidence on that point given on direct examination cannot be considered of any probative value. There was no other evidence directly on this question and, therefore, the evidence was vital to plaintiff's case. For fear that we may not present the question before us in an intelligent manner by giving the substance of the direct and cross-examination, we quote the evidence on this point. On direct examination, Raab testified:

"Q. (By Mr. Stinson) Were you in the elevator at the time Mr. Hill was injured? A. Yes.

"Q. Who else was in there? A. The elevator boy and another man.

"Q. Who was the elevator boy, David? A. Sam.

"Q. Sam? A. Yes.

"Q. Was he a white boy or a colored boy? A. Colored.

"Q. Who started the elevator when Mr. Hill was injured? A. I did.

"Q. You started it? A. Yes, sir.

"Q. Did anybody tell you to start it? A. Sam.

"Q. Sam did? A. Yes.

"The Court: Now, who is Sam?

"Q. (By Mr. Stinson) Was Sam the elevator boy? A. Yes.

"Q. Had you ever run the elevator before that day? A. Yes.

"Q. Had Sam allowed you to run it? A. Yes.

"Q. And he let you run it that day, did he? A. Yes.

"Q. Was Sam standing beside you when he started? A. Yes.

"Q. (By Mr. Stinson) David, please tell these Gentlemen of the

Jury what you did to start the elevator on that day. A. Well, you turn the handle.

"Q. Just turn the handle? A. Push it.

"Q. Now, who was nearer the door at this particular time when Mr. Hill was hurt, you or the colored boy? A. Sam.

"Q. Sam? Were you on Sam's left or on his right side? A. On his left side.

"Q. On his left side? A. Yes, sir.

"Q. And was the control that you started the elevator with on the left-hand side of the door—on the left side of the door? A. Yes.

"Q. (By Mr. Stinson) Who was nearer the door at the time the elevator started, you or Sam? A. Sam.

"Q. Sam? What did he say to you just before you started the elevator? What did he say to you? What were his words? A. He said: "Go on."

"Q. 'Go ahead'? A. Yes.

"Q. Did you have anything to do with either opening or closing the door at the time? A. No.

"Q. How many times had Sam permitted you to run the elevator before this time, David? A. Lots of times; I don't remember how many."

On cross-examination he testified as follows:

"Q. And do you say that you had done that before? A. Yes.

"Q. How many times before? A. I don't know how many times. He had let us do it a lot of times.

"Q. What? More than once? A. Yes.

"Q. Well, Sam did not know you were going to start the elevator this time, did he? A. Yes.

"Q. Now, do you claim that Sam said anything to you at that time? A. Yes.

"Q. Yes. The truth of it is that you did not have any conversation there with the boy, Sam, at all, when these people were getting on, did you? That is the truth of it, isn't it? A. What do you mean?

"Q. I say the truth of it is that you did not have any talk with Sam at all while these people were getting on? That is the truth, isn't it? A. There is only one man that got on.

"Q. Only one man got on? A. Yes.

"Q. There wasn't three or four then got on ahead of Mr. Hill? A. No.

"Q. You are sure of that too, are you? A. Yes.

"The Court: Now, I don't understand you. Was there more than one got on?

"Mr. Popham: He says that only one man got on besides Mr. Hill.

"The Court: I know, but he shook his head.

"Q. (By the Court) Was there more than one man that got on at the time? A. Well, there was Sam and myself and then another man.

"Q. Just Sam and you? A. Yes, sir.

"Q. And Mr. Hill? A. No; one other man. I don't know who he was. He was some man got in.

"The Court: Go ahead.

"Q. (By Mr. Popham) But there wasn't three or four that got on ahead of Mr. Hill at all? A. No.

"Q. You are sure of that? A. Yes.

. . .

"Q. From the time the elevator got down there until it started you didn't have any talk at all with Sam, did you? A. Well, he just pushed me out of the way and took the wheel.

"Q. Just pushed you out of the way? A. Yes.

"Q. And is that all that happened? He just pushed me out of the way and then he went down.

"The Court: I cannot hear.

"Mr. Popham: Just pushed him out of the way and then he went down.

"Q. (By Mr. Popham) You must keep your voice up a little so these men can hear you. And, after he pushed you out of the way and went down then he stopped down at the bottom, didn't he? A. Yes, sir.

"Q. Now, you did not have any more talk with him from then on until Mr. Hill fell, did you? A. No, sir.

"Mr. Popham: All right, that is all; thank you."

The last question and answer constitute the foundation upon which appellants have rested their argument that the witness destroyed his evidence in chief to the effect that Samuel Brown directed him to start the elevator. The incident referred to (Sam's pushing Raab away from the controls) occurred on a prior trip of the elevator, some 10 or 15 minutes before plaintiff was injured. We think appellants are correct in their contention that the time referred to in the question was after Raab had been pushed away from the controls on a prior movement of the elevator and before plaintiff was injured. Even granting that, we do not find any conflict in Raab's evidence on this point. He stated on direct examination that all Brown said was, "Go on." Brown had just come from the ice room with ice for a patron, intending to take it up in the elevator. The boy, Raab, was at the controls at that time. When Raab, on cross-examination, testified he did not have any talk with Brown immediately before plaintiff was injured, he was literally correct. Note the meaning of the word "talk" and especially the words "talk with." In Funk & Wagnalls Dictionary we note the following: To talk *to* a person is to address words to him. To talk *with* a person is to speak and listen alternately,

154

to carry on a conversation. ██ "The officer *speaks* the word of command, but he does not *talk* it." So, if Brown said to Raab "Go on," Raab truthfully did not have any *talk with* Brown.

The rule relied on by appellants was stated in Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W. (2d) 644, l. c. 647 [6, 7], as follows: "Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted." It is obvious, we think, that the rule does not apply to the facts in this case.

██ Appellants in their brief say, "Plaintiff having offered evidence of specific negligence is not entitled to invoke the res ipsa loquitur doctrine," citing cases. Plaintiff in his petition did rely upon the res ipsa loquitur doctrine, but in the trial of the case, he introduced evidence of specific negligence. He was entitled to do that. Raymond on Missouri Instructions, Vol. 1, sec. 66 and sec. 155; Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S. W. (2d) 21, l. c. 25 [5, 6]. Plaintiff's instruction submitted specific negligence in conformity with the proof. Note a portion of plaintiff's instruction #1, ". . . and that while he was in the act of attempting to board the elevator through the door thereof and while he had one foot on the elevator and one foot in the lobby, the elevator moved and started in motion, as a direct and proximate result of the negligence and carelessness, if any, of the defendants, through the operator of said elevator, in that the operator thereof negligently and carelessly (if you so find) caused or permitted the elevator to start while plaintiff was in the position above described; . . ."

██ Appellants further say in their brief that, "The disjunctive submission 'caused or permitted' is not sustained by the record." We do not agree. If the jury believed that appellants' agent Brown said to Raab "Go on," it could have been interpreted as a direction that Raab operate the elevator. Raab was at the controls at the time and Brown was holding a pitcher of ice, and in view of the past permission to run the elevator, Raab had good reason to believe Brown was telling him to operate the elevator at that time. The word "cause" means to induce, to compel, or to be the cause of. Now as to the question of whether the evidence sustained a finding that Brown permitted Raab to start the elevator even though the jury should disbelieve that Brown said to Raab, "Go on." To permit means to allow by tacit consent or by not hindering; to grant leave to by express consent or authorization. It must be remembered that Raab had on prior occasions operated the elevator with the permission of Brown. The

circumstances surrounding the locus in quo were ideal for Raab, a child of 12 years, to demonstrate that he could operate the elevator. Brown, with the pitcher of ice in his hands, saw Raab at the controls. Under such circumstances he knew, or should have known, that Raab would in all probability start the elevator unless ordered not to do so. Brown testified that he did not put the pitcher down until after Hill fell. The evidence that Brown had pushed Raab away from the controls of the elevator on a previous occasion lends weight to the theory that Raab was anxious and likely to run the elevator, if given half a chance. We, therefore, rule that the evidence was sufficient to authorize a jury to find that Brown had tacitly consented and permitted Raab to operate the elevator. Appellants further say in their brief that, ''The jury was not instructed that a verdict could be returned on only one of the two inconsistent theories of submission in the instruction.'' The meaning of the word ''caused'' is not inconsistent with the meaning of the word ''permitted.'' See 48 C. J., p. 924, the word ''permit.'' On page 927 of the same volume we note the following, ''To be permitted. Used with consent.'' Note also the phrases, ''cause or permit, do or permit,'' etc. See also 11 C. J., pp. 38, 39, where it is said, ''Caused, in the past tense, has been employed as synonymous with contributed, or occasioned, and as equivalent to initiated.'' See, also, Coon v. Froment, 49 N. Y. S. 305, l. c. 306. There being ample evidence on the issue of facts submitted in the disjunctive, the point must be ruled against appellants. Raymond on Instruction, Vol. 1, sec. 70.

Defendants asked, and the court gave, the following instruction on this issue: ''The Court instructs the jury if you believe from the evidence that the elevator operator Sam Brown was on said elevator at and immediately prior to the time plaintiff fell, and if you find that he was then and there at his post of duty, and if you find that the boy Raab started said elevator and that it was not started by any act or permission of said operator at said time, if you so find, and if you find that defendants and said operator in the exercise of the highest degree of care at all times would not have known or anticipated that said elevator would or might be so started by said boy, and if you further find that the starting of said elevator by said boy was the direct and sole cause of any injuries received by plaintiff and that defendants and said operator were not guilty of any negligence as submitted in these instructions, if you so find, then plaintiff cannot recover and your verdict must be for defendants.'' It will be noted that this instruction informed the jury that if Sam Brown, in the exercise of the highest degree of care, would not have known or anticipated that Raab would start the elevator at the time he did, to return a verdict for the defendants. The jury found against the defendants on that issue, and since there is substantial evidence to

sustain that finding, we are bound by the jury's verdict. Schide v. Gottschick, 329 Mo. 64, 43 S. W. (2d) 777, 1. c. 780 [6, 7].

Appellants' next assignment of error pertains to plaintiff's instruction #2. In the brief, under Assignments of Error, appellants say, "The court committed prejudicial error in giving plaintiff's instruction II." Under Points and Authorities of the brief, we find the following, "The giving of plaintiff's instruction II was prejudicial error." This is followed by a citation of authorities. It is evident that appellants have not preserved any point for our review as to instruction #2. Kleinschmidt v. Globe-Democrat Pub. Co., 350 Mo. 250, 165 S. W. (2d) 620; Aulgur v. Strodtman, 329 Mo. 738, 46 S. W. (2d) 172, 1. c. 173 [3]; Pfotenhauer v. Ridgway, 307 Mo. 529, 271 S. W. 50, 1. c. 51 [5].

Appellants insist that the verdict of $19,500.00 is grossly excessive. The evidence discloses that plaintiff was 86 years old at the time of the unfortunate accident. He was able to go about town and attend to some business before he was injured. Considering his age, he was in fairly good health. Plaintiff sustained a broken hip and shoulder. He spent 9 months in a hospital and it was necessary to have a nurse with him during all that time. He was fed through a nasal catheter and through the veins, and was given a number of blood transfusions. He was in constant pain and it was necessary to administer sedatives. After leaving the hospital plaintiff had a nurse with him at all times because he could not walk or get out of bed without help. His injuries are permanent and extremely painful. To the date of trial plaintiff had expended for hospital care, nursing, medicine and doctor bills about $12,400.00. The necessity of this expenditure and its reasonableness were shown by plaintiff's evidence, and the amount was not seriously questioned by the defendants. The jury, therefore, allowed plaintiff about $7,000.00 as compensation for his pain and his injuries. With reference to his injuries we have related only the ultimate facts and the major injuries sustained. They could be detailed but we are of the opinion that that is not necessary. What we have said is sufficient to demonstrate that a verdict of $7,000.00 is not excessive to compensate plaintiff for the injuries he suffered. Defendants introduced evidence tending to show that much of the plaintiff's suffering was due to ailments not the result of the injuries sustained, but due to old age and conditions existing prior to the accident. The jury heard the evidence and were specifically instructed not to allow plaintiff any damages for suffering not caused by the fall in question, and not to allow any expenses except a reasonable amount necessarily incurred by reason of the injuries sustained. The amount of the verdict was amply supported by the evidence. In a case cited by appellants, Dorman v. East St. Louis R. Co., 335 Mo. 1082, 75 S. W. (2d) 854, 1. c. 861 [9, 10], this court en

banc approved a judgment of $7,500.00. The injuries of the plaintiff in that case were not as severe as plaintiff Hill sustained in this case. The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Tipton, J.,* and *Leedy, P. J.,* concur; *Ellison, J.,* not sitting.