STATE OF MISSOURI, at the Relation of UREGAS SERVICE COMPANY, INCORPORATED, Relator, v. GEORGE P. ADAMS, Judge of the Circuit Court of Montgomery County, Missouri, Respondent, No. 43865— 262 S. W. (2d) 9.

Court en Banc, November 9, 1953.

390

*William Waye, Jr., Norris H. Allen* and *W. R. Gilbert* for relator-plaintiff; *Anderson, Gilbert, Wolfort, Allen & Bierman* of counsel.

*Sam Nowlin, William H. Becker* and *Scott O. Wright* for respondent; *Clark & Becker* of counsel.

HYDE, J.—Prohibition to prevent enforcement of order to compel answer to interrogatories in the case of Earl Richard Gregory v. Uregas Service Co., Inc., which was a suit for personal injuries sustained in a gas explosion. The principal question for decision is whether the information the Court ordered to be given is privileged.

Gregory and his landlord, from whom he rented an apartment, were attempting to determine the cause of the failure of a hot water heater to operate when an explosion occurred. The negligence charged against relator included failure to inspect before supplying gas to determine whether the heater had an automatic shut off suitable to the type of gas furnished, furnishing gas not sufficiently odorized, supplying gas when it knew or in the exercise of care should have known that the heater did not have a "100% shut off valve", negligent inspection, and negligent failure to warn. The interrogatories required to be answered by relator were as follows:

"1. Did the defendant, its attorneys, its insurer or any of them, around March 1, 1952, or at any other time, cause the hot water heater located in the basement to be inspected and tested?

"2. What persons were present at the inspection?

"3. What are the names and address of these persons?

"11. Did you take any pictures of the heater?

"12. If you did take pictures, what photographer or photographers took the pictures and how many pictures were taken?

"13. Did two men connected with the Uregas Company or the defense, in the latter part of January, or the first part of February, take some samples of liquid petroleum gas out of the tank located at the Teacutter residence?

"14. If samples were taken, by whom were they taken and what are their addresses?"

Relator's general manager answered these interrogatories by saying in substance that he had no knowledge of any of these matters and had no knowledge that relator's attorneys or insurer caused these things to be done. Plaintiff then filed a motion to require answers by relator which were not confined to the personal knowledge of the general manager. The Court made such an order and it is the enforcement of this order that relator seeks to prohibit.

■ Relator contends both that the information sought was ·privileged and that the answer by its general manager was a complete compliance with Sec. 510.020 RSMo. V.A.M.S. The latter contention is clearly wrong. We have definitely held that interrogatories to a corporate defendant are directed to the corporation and the responsibility for answering is imposed on it. State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S. W. (2d) 907; State ex rel. Kansas City Public Service Co. v. Cowan, 356 Mo. 674, 203 S. W. (2d) 407. As we said in the latter case (203 S. W. (2d), l.c. 410), an officer answering interrogatories for a corporate party "is answering for the corporation and not for himself", and it is immaterial that he does not know of his own knowledge the facts required to be stated. Of course, his personal knowledge may be called for under Rule 3.19, if that is desired. We hold that material information not privileged which the corporation has must be given when obtained by any if its officers, agents or employees, including its attorneys.

■ Is the information sought by these interrogatories privileged? This is not a case of seeking the disclosure of hearsay, as in such cases as State ex rel. Thompson v. Harris, 355 Mo. 176, 195 S. W. (2d) 645 and State ex rel. Evans v. Broaddus, 245 Mo. 123, 149 S. W. 473. The corporation knew who the persons were who made the inspections, and took the samples, because it sent them out to do it. It, of course, makes no difference (as conceded at the oral argument) whether the attorneys acting for relator in doing this were directly employed by it or were employed for it by its insurer. In either event, they were acting for the corporation and by its authority. Thus the situation is the same as if the corporation had sent out its own employees to do these things. When the corporation sent out persons for these purposes, it thereby made them witnesses in the case competent to testify as to any facts or conditions they found and observed that were material to the issues. Can the corporation thus make persons witnesses and then keep their identity secret?

We think this situation falls within our rulings in State ex rel. Miller's Mutual Fire Ins. Assn. v. Caruthers, 360 Mo. 8, 226 S. W. (2d) 711. We there ruled that the relator insurance company (sued on a fire insurance policy) should give the names of adjusters who inspected the plaintiff's property after the fire for which recovery was sought. Relator's defense was that the fire was wilfully set. We said, in ruling that the plaintiff's first interrogatory (seeking this information) should be answered: "The adjusters, who participated in the investigation, adjustment or inspection of plaintiff's property following the fire, would certainly be competent witnesses as to the amount of the loss which was one of the important issues in the case. They may have also observed conditions on the premises tending to show the origin of the fire. Plaintiff had the right to take the depositions of these adjusters to find out what their testimony would

be.'' So here the persons who made the inspection may have learned facts tending to show the cause of the explosion, which would be material evidence.

The plaintiff in State ex rel. Miller's Mutual Fire Ins. Assn. v. Caruthers, supra, also had a count for damages for the activities of relator's agents which she claimed slandered her.. In connection with this count, plaintiff asked in another interrogatory about an investigation made by relator in another county, where she had lived, seeking to learn the purpose of the investigation, what instructions were given to the investigators and what persons were interrogated by them. We said this was improper because it ''called for names of persons whose connection with the case and knowledge of the facts could only have become known to its agents by hearsay.'' We also said it called for ''thoughts, mental processes and work product'' of the company's agents, all of which were improper. However, we also said: ''We would have a different question if plaintiff had only asked for the names of relator's investigators or agents who made the investigation for it in Williamson County upon which she bases her claim in Count Three. This would be within our ruling on the First Interrogatory. We would also have a different question if plaintiff had asked for the name of any investigator or agent who was alleged to have interviewed a specifically designated witness, to whom it was alleged a certain statement had been made and such statement was alleged as the basis of the slander count.'' (See also State ex rel. Iron Fireman Corp. v. Ward, 351 Mo. 761, 173 S. W. (2d) 920, involving a suit for damages to the plaintiff's house by a fire alleged to have been caused by a defective stoker, in which we required production of the record of an inspection made after the fire.)

We think these rulings are applicable here. The persons sent by relator to make inspections of the water heater and take samples of the gas (which could be used as evidence in the case) became immediately qualified to be witnesses, when they observed material conditions and facts; and either party may use the testimony of any witness if he desires to do so. There is no hearsay involved in identifying these witnesses. Relator (through its agents who sent them) knows who they are and had such knowledge from the time they became witnesses, just as much as in the cases, above cited, where witnesses were known by the corporation involved to have been at the scene of a collision causing personal injuries. No one would contend that a doctor, who examines a plaintiff in a personal injury suit for the defendant, is not thereby made a witness available to either party. The plaintiff certainly has the right to know who he is and what he will say. (See Sec. 510.040 RSMo. V.A.M.S.) So we think in this case plaintiff had the right to know who were the persons sent to make the inspections, and take the samples, and to take their depositions if he desires to do so; and that they are likewise witnesses available to either party for

obtaining information about material facts. We see no reasonable distinction between physical examination of a person, when his condition is an issue in the case, and physical investigation of inanimate objects the condition of which are likewise issues therein. We, therefore, hold that information as to the identity of these witnesses is not privileged and that questions 1, 2, 3, 13 and 14 should be answered.

However, the situation is different as to questions 11 and 12. In State ex rel. Terminal R. R. Assn. v. Flynn, 363 Mo. 1065, 257 S. W. (2d) 69, we held that photographs were privileged and "outside the arena of discovery," when taken preparatory to or in anticipation of litigation. We said, like diagrams, maps and drawings, they "were the 'work product' of relator in preparation of its defense." Under that ruling, to which we adhere, plaintiff was not entitled to information as to whether relator took pictures and how many it took. It is argued that plaintiff was entitled to know who the photographer was because he might have observed conditions on the premises about which he could testify independently of what was shown in any pictures he took. The question does not indicate any such purpose, or any other purpose than to obtain the pictures; and the request for the photographer's identity is combined in the same question with the improper request as to the number of pictures taken. Therefore, we do not think relator should be required to answer questions 11 and 12.

Our rule is made absolute to prohibit respondent judge from requiring answers to questions 11 and 12, and in all other respects our rule is discharged. All concur.