Robert L. SMITH, Plaintiff-Appellant,

v.

WABASH RAILROAD COMPANY, a Corporation, Defendant-Respondent.

No. 52041.

Supreme Court of Missouri,
En Banc.

July 10, 1967.

Rehearing Denied July 10, 1967.

Lyman Field, Rogers, Field & Gentry, Kansas City, Conn Withers, Liberty, for appellant.

James H. Ottman, Donald K. Hoel, Robert K. Waldo, Kansas City, of counsel, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, for respondent.

HENRY J. WESTHUES, Special Commissioner.

This is an action based on the res ipsa loquitur doctrine. The plaintiff, Robert L. Smith, filed a petition in the Circuit Court of Jackson County, Missouri, at Kansas City, alleging that on January 2, 1962, he was foreman of a grain inspection crew and while in the process of obtaining samples of grain from railroad cars located on defendant Wabash Railroad's tracks in North Kansas City, Clay County, Missouri, a door of a boxcar fell, striking and seriously injuring him. Plaintiff prayed for damages in the sum of $150,000. Defendant Wabash Railroad Company filed an answer consisting of a general denial and it affirmatively pleaded contributory negligence.

A trial resulted in a jury verdict for the defendant. Plaintiff's motion for a new trial was overruled and an appeal was taken from the judgment entered in accordance with the verdict.

We shall hereinafter refer to the parties as they were in the court below.

In his brief, plaintiff says that the trial court erred in excluding evidence offered by plaintiff, abused his discretion in restricting plaintiff's counsel in his argument to the jury, abused his discretion in limiting the voir dire examination of jurors, erred in refusing to give an instruction requested by plaintiff, and erred in giving an instruction requested by the defendant.

The car from which the door fell was a Great Northern Railroad boxcar No. 10,175. It was loaded with corn at Emerson, Nebraska. The defendant Wabash received the car from the Chicago and Northwestern Railroad Company on December 24, 1961, at Council Bluffs, Iowa, where it was inspected by the Wabash. It was transported to Kansas City, Missouri, where it was placed on track 14 with a number of other cars also loaded with grain.

The evidence was that plaintiff Smith and his crew, employees of the Missouri State Grain Inspection Department, would begin their work at daybreak and continue until samples of grain were taken from all shipments of grain located in the railroad yards. The duty of one member of the crew was to break the seal and open the door of the cars; another would take out a small amount of grain; and still another would then close and reseal the car door. Before the crew began its work, plaintiff Smith, the foreman, would go by the railroad yard office and obtain a list of cars containing grain to be inspected. Smith would also tag all such cars and the crew would follow and perform their work.

On the day in question, January 2, 1962, plaintiff and his crew, after completing their work in other railroad yards, went to the Wabash tracks about 1:00 p. m. Plaintiff went by the yard office and obtained the Wabash manifest listing 12 cars loaded with grain. The cars, on track 14, had been marked by the Wabash with a tag reading "Grain Inspection." Plaintiff hung a ticket on each of the 12 cars. He then went to the place where the crew was at work and talked to members of the crew. While standing there, on track 13, with his back to the car, the door in question fell and struck him on the head, pinning him to the ground.

The evidence was that Pendergrast, a member of the crew, broke the seal of the car, knocked the pin out of the hasp, and attempted to pry the door open with a bar. About the time the door began to slide or open, it fell striking plaintiff. A number of witnesses, with years of experience as members of grain inspection crews, testified that out of thousands and thousands of car doors opened for grain inspection they had seen two or three doors fall.

Defendant introduced no evidence with reference to the cause of the door falling.

Before considering plaintiff's points, we shall dispose of defendant's contention that the evidence was insufficient to sustain a case of res ipsa loquitur.

In its brief, defendant says plaintiff was a licensee and not an invitee while on defendant's property as a member of the grain inspection crew. The evidence disclosed that the defendant placed the cars containing grain on track 14, marked them for grain inspection, and gave plaintiff a list of the cars. In other words, defendant cooperated with the crew and the grain dealers to make the inspection possible. It is self evident that plaintiff and his crew were invitees.

Defendant says that to make a case under the res ipsa loquitur doctrine the evidence must show (a) that the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) that the instrumentalities were under the management and control of the defendant; and (c) that the defendant possesses superior knowledge or means of information as to the cause of the occurrence. Citing McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641 (en Banc)

Defendant concedes that the falling of the door was an unusual occurrence within the doctrine but contends that the car in question was not in the exclusive control of the Wabash and that the Wabash did not have superior knowledge or means of information as to the cause of the occurrence.

We are of the opinion that the evidence was sufficient to support a verdict for plaintiff. The car in question was in the possession and control of the Wabash. The

fact that it was a car of the Great Northern does not change the situation. The Wabash *inspected and accepted* the car at Council Bluffs, Iowa. From that point up to and including the time plaintiff was injured, the car was that of the Wabash.

*Defendant says that the evidence was insufficient to show it had exclusive control of the car.* Plaintiff offered evidence on this point which the trial court excluded. This was made an assignment of error. During the course of the trial, defendant's counsel questioned each of the witnesses who were present at the time the door fell and asked if any Wabash employees were there. It was definitely shown that no such employee was present. In the argument, defendant's counsel stressed this point and argued that the inspection crew exercised dominion and control of the car; further, that the car belonged to the Great Northern.

■ Plaintiff offered to prove by members of plaintiff's crew that frequently while the crew was in the process of taking samples of grain from cars the defendant Wabash would move the cars; that the Wabash was requested to notify the crew when such movements were to be made, or to red flag the cars; that these requests were refused. The offered evidence was rejected. Plaintiff offered to introduce this evidence on the theory that it tended to prove that the Wabash retained complete control of the cars during the time plaintiff's crew did its work. We are of the opinion that the evidence should have been admitted to refute the theory of defendant that plaintiff's crew assumed control of the car in question and to show that the Wabash retained control to the exclusion of the grain inspection crew.

■ The rule is that if a defendant has the exclusive control or *right of control* then the case comes within the doctrine. McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641; Jones v. Thompson, 360 Mo. 285, 228 S.W.2d 673, 99 A.L.R.2d 181; Maybach v. Falstaff

Brewing Corp., et al., 359 Mo. 446, 222 S.W.2d 87, 75 C.J.S. Railroads § 957, p. 398.

■ Defendant's counsel questioned the members of plaintiffs crew as to whether they inspected the cars before opening the doors. These witnesses stated they would glance at the doors and if a door was bulging a report would be made to the railroad and the railroad would take care of the matter; or in some cases the door on the opposite side of the car would be used. All of these witnesses testified they had nothing to do with car inspections; that they were grain inspectors. They testified that the car in question appeared to be normal to them. The evidence in no way tended to prove that the defendant *did not possess superior knowledge or means of information as to the cause of the occurrence.*

Plaintiff offered to read in evidence portions of a deposition taken some time before the trial. The witness was Clark Cary who was a car foreman for the defendant Wabash. Cary's duties were to supervise inspections and repairs of equipment, including cars. The deposition disclosed that Cary had been called by the superintendent on the day plaintiff was injured and directed to make an inspection of the car in question. The inspection was made within an hour after the door fell on plaintiff. Cary found defects which may have caused or probably did cause the door to fall. The evidence was rejected by the trial court on the theory that it was privileged; in other words, that it was work product in anticipation of litigation.

Plaintiff had obtained the names of Cary and of others by interrogatories submitted to the Wabash. Among the questions was one asking if the car had been inspected after plaintiff was injured and if so, by whom. The answer was that Cary had made the inspection.

■ We are of the opinion that the trial court erred in rejecting the offered

evidence. Plaintiff was entitled to this evidence even though he had based his case on general negligence and the rejected evidence tended to prove specific negligence. Fairley v. St. Louis Public Service Company, Mo.App., 389 S.W.2d 378, 1. c. 382 (6, 7); Hill v. Montgomery, 352 Mo. 147, 176 S.W.2d 284, 1. c. 287(2); Williams v. St. Louis Public Service Company, 363 Mo. 625, 253 S.W.2d 97, 1. c. 101, 102(7).

In its brief, the defendant stated, "The trial court did not err in refusing to allow plaintiff to read to the jury from witness Cary's deposition because: (A) Plaintiff offered the Cary deposition for the sole purpose of attempting to contest defendant's claim that the inspection reports made by witness Cary and others were privileged, and now for the first time asserts that the deposition should have been received to prove specific negligence, an issue never raised at trial by pleading or otherwise."

The record shows that when the deposition was first offered plaintiff's counsel did state that the purpose of offering the deposition was to show that the reports of the inspection made by the employees of the Wabash were not privileged. However, later in the trial, plaintiff offered to read the deposition or parts thereof as evidence in the case. Defendant objected on a number of grounds, one of which was that the deposition was privileged. The final ruling of the court was as follows:

"THE COURT: Very well, I will accept that as a fact. Under the circumstances the Court will sustain the objection to the introduction of this testimony on the ground of privilege. Do you have anything else?

"MR. FIELD: No, sir."

The case for plaintiff was then closed and defendant offered a motion for directed verdict.

■ The deposition of witness Cary should have been admitted. It is obvious that it was not work product or privileged under the law of this State. State ex rel. Uregas Service Co. v. Adams, 364 Mo. 389, 262 S.W.2d 9, 1. c. 12(3).

■ Among the objections to the deposition, as stated in defendant's brief, was that it was not shown that Cary was not a resident of Jackson County, Missouri. The deposition showed that he was a resident of Clay County. There was no evidence to the contrary. The point must be ruled against the defendant.

■ Prior to the trial, plaintiff filed interrogatories, as above noted. Among the questions was one as to whether a written report was made showing the result of the inspections made by the employees of the Wabash. At the trial, plaintiff offered to read the questions and answers thereto to show the existence of a report. The ruling of the trial court requiring the Wabash to answer the interrogatories was proper to enable plaintiff to discover witnesses and other evidence. It does not follow that these questions and answers are in all cases admissible as evidence. We are of the opinion that the report itself was work product. State ex rel. Uregas Service Co. v. Adams, supra; State ex rel. Kroger Co. v. Craig, Mo.App., 329 S.W.2d 804, 1. c. 806 (1–4); State ex rel. State Highway Commission v. Jensen, Mo., 362 S.W.2d 568, 1. c. 569–571(2). Since the report itself was work product, plaintiff should not be permitted to read to the jury the interrogatories and answers thereto to show the existence of a report of the inspection. State ex rel. Kroger Co. v. Craig, supra, 329 S.W. 2d 1. c. 807 (5–8); State ex rel. Uregas Service Co. v. Adams, supra, 262 S.W.2d 1. c. 12(4).

The points which we have not considered so far may be disposed of in short order. The first pertains to the examination of jurors on voir dire. It would serve no useful purpose to consider this point since it is not likely to occur on retrial.

Plaintiff contends that the trial court erred in refusing to permit plaintiff's counsel to explain to the jury the effect of the res ipsa loquitur doctrine. The argument, in substance, was that if plaintiff's evidence was sufficient to establish a case under the doctrine, then negligence could be *presumed*. This is not the law in Missouri. Negligence in such a case may be *inferred* but it may not be *presumed*. Eickmann v. St. Louis Public Service Co., Mo., 323 S.W.2d 802, l. c. 805 (1, 2); 65A C.J.S. Negligence § 220.5, pp. 531–537, and Missouri cases there cited.

Plaintiff's last two assignments of error concern the giving of an instruction on contributory negligence, requested by the defendant, and the refusal to give an instruction on the merits, requested by the plaintiff. It would serve no useful purpose to consider these assignments. The giving of an instruction on contributory negligence must depend on the evidence on a retrial of the case. The trial court gave an instruction for plaintiff which was in substance similar to the one plaintiff requested. The Missouri Approved Jury Instructions should be an ample guide to prepare instructions to conform to the issues on retrial.

The judgment is reversed and the cause is remanded for retrial. It is so ordered.

PER CURIAM.

The foregoing opinion of HENRY J. WESTHUES, Special Commissioner, is adopted as the opinion of the Court en Banc.

HOLMAN, SEILER, EAGER, and HENLEY, JJ., concur.

FINCH and DONNELLY, JJ., concur in result.

STORCKMAN, C. J., concurs in result on ground that submission under res ipsa loquitur doctrine is not available because someone not an agent of defendant was undertaking to open the door with a crowbar when it fell.