**STATE ex rel. MISSOURI PUBLIC SERVICE COMPANY, Relator,**

v.

**Honorable R. Kenneth ELLIOTT, Judge, Respondent.**

**No. 53740.**

Supreme Court of Missouri, In Banc.

Dec. 9, 1968.

William H. Sanders, James Borthwick, John C. Mills, III, Kansas City, for relator. Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel.

Glenn McCann, Kansas City, for respondent. Knipmeyer, McCann & Millett, Kansas City, of counsel.

EAGER, Judge.

This case was instituted by the filing of an original petition for prohibition in this Court. We issued our provisional rule, Respondent filed his return, and there are no material fact issues. We shall state the essential facts. Many of these are shown in exhibits attached to the petition.

On October 11, 1966, Frankie J. Williams filed suit in Platte County against Relator, Missouri Public Service Company, for personal injuries sustained in an explosion and fire occurring in an underground vault of the United Telephone Company building in Platte City on September 2, 1966, where he was working as a cable splicer's helper. Plaintiff's immediate employer was "Electrocom," which was apparently installing equipment under an independent contract, but that is not material here. Relator furnished gas service to the telephone building with underground lines in the surrounding streets and alleys. Plaintiff alleged that through the negligence of Relator gas had been allowed to escape from its lines into the vault and that this natural gas caused the explosion when he lighted a match.

The suit was filed upon the res ipsa theory, and damages of $100,000 were prayed. The answer denied all substantive allegations, and pleaded contributory negligence and assumed risk.

Within a few hours after the explosion (which seems to have pretty well wrecked the building) the manager of the Central Adjustment Bureau located in Kansas City, and an independent consulting engineer were sent to the scene to investigate. The manager was J. Mac Tinklepaugh and the engineer was William K. Mathews. Tinklepaugh testified that the Bureau was "owned by the insurance companies," and that he was "hired" to make this investigation by the "Commercial Union," being contacted by Mr. Redsted of its local claims office in Kansas City, Missouri. It seems to be agreed or assumed that Commercial Union did carry fire insurance on the building and perhaps a more inclusive type of coverage. This witness saw the attorney for Commercial Union, Glenn McCann, at the scene, and stated that he received some directions from Mr. McCann. Mr. Mathews was called by phone from St. Joseph by Mr. McCann and went promptly to the scene.

On January 5, 1967, while no litigation was pending by or against Commercial Union, Relator (sole defendant in the Williams suit) sought to take the depositions of Mathews and Tinklepaugh, producing them by subpoena. Mr. Moore, an associate of Mr. McCann, appeared, purportedly for the witnesses, and for Commercial Union, United Telephone and Mr. McCann. At this point it was obvious that the investigation by each and both of these witnesses was made for Commercial Union or Mr. McCann and, if nominally for the latter, then for Commercial Union through him. On all substantive questions to each of these witnesses, such as what he did at the scene, or what investigation he made, the witness refused to answer upon instructions from Mr. Moore. This direction was based upon the stated reasons that the questions and answers would involve the

work product of Commercial Union, Mr. McCann and United Telephone, in preparation for or in anticipation of "possible or probable" litigation (none of which was then pending). Mr. Mathews admitted that he had records and memoranda, in addition to his recollection. At this point counsel for Relator asked orally that the witnesses be compelled to answer by order of the Court, or be held in contempt.

Motions to that effect and also requesting subpoenas duces tecum were filed; we need not go into detail concerning them. On July 10, 1967, the Court ordered that the witnesses appear for a second deposition and that they "answer any and all questions concerning their knowledge of this accident." On August 11, 1967, the witnesses and attorneys appeared again. Mr. McCann then appeared for the witnesses, and made a statement at the very outset to the effect that he construed the order of Court as requiring the witnesses only to state "their knowledge as eyewitnesses to the accident," and that he would instruct them not to answer any other or further questions, for the reason that they were experts retained by him and working under his supervision in "preparation for or the possibility of litigation" in which his clients might be involved, and that such information as they might have acquired was privileged. It was developed that the witnesses, on instructions, had not brought their records. They did refuse to produce any records and no substantive questions were asked. Plaintiff's counsel in the pending suit noted that he had made no objection and that Mr. McCann had no connection with the plaintiff.

At this point a change of venue was taken to Clay County whereupon Respondent entered the picture. In that Court Relator filed an application for the issuance of subpoenas duces tecum and a motion for an order requiring the witnesses to appear and testify. Mr. McCann filed, on special appearance for the witnesses, a motion to quash that application and for a protective order. The Court announced that it would,

as of March 22, 1968, enter an order quashing the application for subpoenas and further providing that Relator might not inquire into the "knowledge, observations, activities, tests, opinions or conclusions of said witnesses derived from their investigation regarding the nature and causes of the explosion involved in this action." This, of course, resulted in the present proceedings. There seems to be some ambiguity in the order, but we shall consider it fully upon the merits.

Before reaching the legal questions we note a few further facts which are somewhat explanatory. Relator took the deposition of plaintiff, Williams, at great length. It was thus developed: that he and another employee had used, for a substantial period on the afternoon preceding the explosion, an acetylene torch with its gas hose running down through the trapdoor into the vault; that they had used lacquer thinner (of which they had two cans) to polish lead "sleeves"; and also that there was little or no ventilation in the vault and that the trapdoor had been closed when the workmen left on that previous afternoon. The explosion occurred a few minutes after the workmen entered the vault the next morning; at that time plaintiff had again carried the acetylene torch and hose into the vault. It thus becomes glaringly obvious that in the examination of the witnesses now involved, Relator was seeking information which might establish, or lead to other evidence establishing, some cause for the explosion other than natural gas.

The case turns primarily upon the provisions of Rule 57.01(b), V.A.M.R. For convenience, we quote those parts which are applicable here, as follows: "Unless otherwise ordered by the court as provided by this Rule, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, * * * It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. * * * The production or inspection of any writing obtained or prepared by the adverse party or coparty, his attorney, surety, indemnitor, or agent, in anticipation of litigation or in preparation for trial (except a statement given by the interrogating party) or of any writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, or, except as provided in Rule 60.01, the conclusions of an expert, shall not be required."

Respondent's order on its face presents us with two questions: (1) was he correct in refusing to permit subpoenas duces tecum? And (2), was he correct in forbidding what seems to be all discovery from the witnesses Mathews and Tinklepaugh? Mr. McCann appears here nominally for the Respondent, but actually for the Commercial Union (which he says is now involved in litigation against Relator as a subrogee), and indirectly perhaps for the witnesses. His support of the order is based upon the contention that these witnesses were experts and that *all* that they did and saw (visual, oral or written), as well as all memoranda and reports, constituted "work product" performed and made in anticipation of litigation; and that all such was privileged. He must stand or fall on this battle line. At times Mr. McCann seems to entertain the view that all of this was *his* work product. We shall look through him to his client, for a lawyer, acting independently without a client, is in no position to claim *any* work product. Relator insists: (1) that these witnesses were agents of a nonparty, and entitled to no claim of work product or privilege under Rule 57.01(b); and (2) that, party or no party, an expert, as well as everyone else, may be required to tell what he did, saw, took, or disturbed; and further, but somewhat incidentally, that injustice will result here from a refusal of disclosure, since Relator is defending a serious personal injury suit filed on the res ipsa theory, and is thus called upon to establish the cause of the explosion.

Relator's brief is a little confusing concerning any insistence upon the production of the records and memoranda of these witnesses under subpoenas duces tecum. The point is not fairly included in the statement of its principal point, but counsel dwell at some length in the argument portion of the brief upon the supposed applicability of State ex rel. Filkey v. Scott, Mo.App., 407 S.W.2d 79, where the issuance of subpoenas duces tecum was approved (for written appraisals by real estate experts) on the ground that the documents were prepared for a nonparty, which was not and could not be an agent of the plaintiff in the pending condemnation suit. The case presents certain distinctions, principally in that: the proceedings there were had under § 491.100, RSMo1959, V.A.M.S., providing for the production of records at trial; no question of discovery seems to have been involved; and the Court did not discuss Rule 57.01. It did discuss the question of the privilege of work product generally, and apparently recognized that such documents might well be work product if prepared by and in the possession of a party to the suit. Cited were: State ex rel. Terminal R. Ass'n of St. Louis v. Flynn, Banc, 363 Mo. 1065, 257 S.W.2d 69, and State ex rel. State Highway Commission v. Jensen, Banc, Mo., 362 S.W.2d 568. No question of oral discovery or disclosure was involved.

■ Based on that opinion, counsel contended in the argument portion of their brief that Mr. McCann (and his client) were entitled to no privilege of work product, even as to the records and memoranda of the witnesses. However, in the oral argument, counsel stated that he was not concerned with the production of the files of the witnesses upon discovery, and that he did not intend to seek or require any communications made or had between them and their employer. We construe these statements as a waiver of the prior insistence upon subpoenas duces tecum, and upon the production of reports and memoranda, at least so far as the present discovery proceedings are concerned.

■ We have held in several instances that reports, appraisals and photographs, prepared, taken or made by the representatives of a litigant are work product and not subject to discovery. State ex rel. State Highway Commission v. Jensen, Banc, Mo., 362 S.W.2d 568; State ex rel. St. Louis Terminal R. Ass'n of St. Louis v. Flynn, 363 Mo. 1065, 257 S.W.2d 69; Smith v. Wabash R. Co., Banc, Mo., 416 S.W.2d 85; State ex rel. St. Louis Public Service Co. v. McMillian, Banc, Mo., 351 S.W.2d 22. In fact, in Jensen we extended that privilege to the Highway Commission as to an appraisal made shortly before suit was filed by it, but when litigation was imminent. We have apparently not decided specifically whether such privilege extends to the documents of an "outsider" who may be collaterally interested in pending litigation. In Flynn, supra, no suit had been filed at the time the photographs were taken but there was little doubt that the Terminal would be sued; and, as indicated in that opinion, there is a privilege of documentary work product independent of Rule 57.01. In fact, the reference in Rule 57.01(b) to any *"matter, not privileged"* is necessarily a reference, at least in part, to our general law in which certain types of privilege are established. It may thus have been indicated that the production of records, photographs, memoranda, etc., prepared on behalf of a nonparty in reasonable anticipation of litigation should not be required in discovery proceedings, but in view of the concessions made by Relator's counsel in argument we need not rule the point here. To do so would be gratuitous; and the Court does not render advisory opinions. We shall not disturb that portion of Respondent's order quashing the application for subpoenas duces tecum.

We therefore reach the actually contested question,—namely—whether these witnesses shall be required to state what they saw at the scene of the explosion, what they did, and whether they disturbed anything or took anything away.

Rule 57.01(b) expressly exempts the conclusions of an expert from discovery. That Rule is, of course, directed at *parties* and their attorneys and agents. Respondent's counsel insist that it is equally applicable to all experts. The question has not been decided, so far as we can find, but it has also become unnecessary for us to rule that question. Counsel for Relator stated specifically in oral argument that he was not arguing about the "conclusions," as he did not think "it is particularly material"; and, at another point, that he was not "pursuing that question" here. As a precaution, we have checked these statements through our recording system. The result is that Relator, which has the burden in prohibition, is not now attacking that portion of the order ruling out the "opinions or conclusions" of the supposed experts. We are not seeking to dodge contested issues, but if counsel wish to limit the issues we accept the offer, and they are to be commended for so doing. We shall thus assume that, for the purposes of this opinion, the conclusions of the witnesses are not discoverable.

It may certainly be conceded that a *nonparty* and its agents cannot possibly be entitled to any greater degree of privilege than a party; and our adjudicated cases are sufficient to settle the remaining question as to both. We have in mind the contention of Respondent that these witnesses were "experts" and that everything which they saw or did entered into their mental processes and constituted a part of their "expertise." We do not accept that philosophy. We now rule that such witnesses, whether "experts" or not, may be required to state what they saw at the scene, whether they took anything away, and whether they disturbed anything; as to what they did, they should also be required to testify to the extent that any ordinary individual would, so long as that testimony does not necessarily involve their conclusions. It is impossible to draw an exact line on such matters, and counsel must seek fairly to follow the delineations now made. Any other ruling would sink the courts into a hopeless *bog*, by forcing them to decide in each case who *is* and who *is not* an expert; that is relatively impossible.

This ruling is supported by the following cases: Smith v. Wabash R. Co., Banc, Mo., 416 S.W.2d 85; State ex rel. Uregas Service Co. v. Adams, 364 Mo. 389, 262 S.W.2d 9; State ex rel. Miller's Mutual Fire Ins. Ass'n v. Caruthers, Banc, 360 Mo. 8, 226 S.W.2d 711. It is also supported, at least by way of analogy, by: State ex rel. Pete Rhodes Supply Co. v. Crain, Mo., 373 S.W. 2d 38; State ex rel. Hof v. Cloyd, Banc, Mo., 394 S.W.2d 408; State ex rel. Hudson v. Ginn, Banc, Mo., 374 S.W.2d 34. In each of the last three cases cited the Court required the discovery of the names of witnesses and of persons who had other supposedly material information, which names were in the hands of the party's attorney. In Cloyd, the Court said in part, 394 S.W.2d loc. cit. 411: "Further, if the information sought is a factual matter within the knowledge of the party interrogated or his attorney, it is not protected from discovery because the information was developed as the result of the party's investigation." Those cases exemplify the fact that the investigation of an attorney, through his own efforts or those of others, is not *per se* protected from discovery as work product.

The first three cases are more directly in point. In Uregas, supra, the defendant or its insurer had sent out inspectors to investigate the explosion of a water heater for which it had been supplying gas, and to check the heater. After suit was filed by the homeowner, claiming negligence in several respects, plaintiff filed interrogatories asking: an admission that the heater was inspected; the names of the persons who made the inspection; whether photographs were taken and by whom; and whether samples of the LP gas were taken. The Court held that the interrogatories concerning photographs were objectionable under the Flynn case, supra. It held that the other interrogatories must be answered;

it further held that the inspectors were, in any event, acting for the defendant and by its authority and said, 262 S.W.2d loc. cit. 11: "When the corporation sent out persons for these purposes, it thereby made them witnesses in the case competent to testify as to any facts or conditions they found and observed that were material to the issues. Can the corporation thus make persons witnesses and then keep their identity secret?" It further said, at loc. cit. 12: "The persons sent by relator to make inspections of the water heater and take samples of the gas (which could be used as evidence in the case) became immediately qualified to be witnesses, when they observed material conditions and facts; and either party may use the testimony of any witness if he desires to do so. * * * No one would contend that a doctor, who examines a plaintiff in a personal injury suit for the defendant, is not thereby made a witness available to either party. The plaintiff certainly has the right to know who he is and what he will say. See Section 510.040 RSMo1949, V.A.M.S. So we think in this case plaintiff had the right to know who were the persons sent to make the inspections, and take the samples, *and to take their depositions if he desires to do so*; and that they are likewise witnesses available to either party for obtaining information about material facts. We see no reasonable distinction between physical examination of a person, when his condition is an issue in the case, and physical investigation of inanimate objects the condition of which are likewise issues therein." (Italics ours.) We decline to recognize any distinction between the inspectors there and the "experts" here. They all supposedly had some knowledge and background fitting them for the tasks they performed.

To the same effect is the case of Miller's Mutual, supra, which is discussed at some length in the Uregas case. There the Court said, in part, loc. cit. 712: "The adjusters, who participated in the investigation, adjustment or inspection of plaintiff's property following the fire, would certainly be competent witnesses as to the amount of the loss which was one of the important issues in the case. They may have also observed conditions on the premises tending to show the origin of the fire. Plaintiff had the right to take the depositions of these adjusters to find out what their testimony would be." Our rules impose no limitations which would alter those decisions, although the two cases were decided prior to 1960. In fact, these cases eliminate any "privilege" claimed to exist under general law at the time our Rules were adopted, in so far as this particular type of evidence is concerned.

In Smith v. Wabash, supra, decided in 1967, it was held that the testimony of the car foreman of defendant's freight yards, concerning what he saw and found when he examined a grain car immediately after its door fell off and injured the plaintiff, was admissible over an objection of privilege and work product; his written report was excluded.

Respondent's attempts to distinguish Miller's Mutual and Uregas are unimpressive. This Court, as indicated in its opinions, favors a rather broad doctrine of discovery. The writer learned that some years ago, having dissented with only one concurrence in Crain and Ginn, supra, on the ground that information in an attorney's hands was work product. We are committed to a theory of discovery which requires the disclosure of facts and things observed by one present at the scene of an occurrence, even though he be the agent of a party and, as we now hold, even though he be an "expert." As said in Uregas, these persons become "witnesses in the case, competent to testify as to any facts or conditions they found and observed that were material to the issues." By reason of our Rule 57.01(b) such discovery does not include the disclosure of the opinions and conclusions of experts (at least as to the experts of a party). But the observations and activities of an expert, consisting of such things as an ordinary person might see and do, must be disclosed. Witnesses and counsel should, if they sincerely try, be

able to separate such testimony from conclusions and opinions.

Respondent is prohibited from enforcing those parts of his proposed order which conflict with our rulings in this opinion. The conflict has been sufficiently defined. To that extent our provisional rule is made absolute.

All concur.